[No. 56153–2.   En Banc.   April 5, 1990.]

*In the Matter of the Personal Restraint of*
PATRICK JAMES JEFFRIES, *Petitioner.*

486

*Brian Reed Phillips* and *Stephanie Ross,* for petitioner.

*David H. Bruneau, Prosecuting Attorney,* and *Christopher Melly, Chief Deputy,* for respondent.

DORE, J.—This is Patrick James Jeffries' third personal restraint petition challenging his 1983 aggravated first degree murder convictions and death sentence. The court has now considered the petition, the parties' briefs, and the State's motion to dismiss the petition as repetitive. *See* RAP 16.4(d). We have also reviewed the trial transcript. For the reasons discussed below, we grant the State's motion in part and dismiss the petition in its entirety.

## PROCEDURAL BACKGROUND

Petitioner was represented at trial by attorneys Mark Mestel and Walter Sowa. Attorney Brian Phillips, who practices in the same office as Mr. Mestel, represented petitioner on appeal[1] and in one of his two previous personal restraint petitions.[2] Mr. Sowa acted as counsel in the other personal restraint proceeding, which was filed while the direct appeal was still pending.[3] In the present petition, attorneys Phillips and Stephanie Ross raise some 29 issues, most of which were rejected on their merits in one or more of the prior proceedings. (See appendix for a list of all 29 issues with citations to the portions of our prior opinions addressing the renewed claims.)

██ ██ A claim rejected on its merits on direct appeal will not be reconsidered in a subsequent personal restraint petition unless the petitioner shows that the ends of justice would be served thereby. *In re Taylor,* 105 Wn.2d 683, 687, 717 P.2d 755 (1986). Nor may a prisoner bring "more than

---

[1]*State v. Jeffries,* 105 Wn.2d 398, 717 P.2d 722, *cert. denied,* 479 U.S. 922 (1986) (*Jeffries* I).

[2]*In re Jeffries,* 110 Wn.2d 326, 752 P.2d 1338, *cert. denied,* 109 S. Ct. 379 (1988) (*Jeffries* III).

[3]In re Jeffries, cause 53397-1 (*Jeffries* II).

one petition for similar relief" absent a showing of "good cause". RAP 16.4(d). A successive petition seeks "similar relief" if it raises matters which have been "previously heard and determined" on the merits or "if there has been an abuse of the writ or motion remedy". *In re Haverty,* 101 Wn.2d 498, 503, 681 P.2d 835 (1984) (quoting *Sanders v. United States,* 373 U.S. 1, 15, 17, 10 L. Ed. 2d 148, 83 S. Ct. 1068 (1963)). We will discuss these concepts in more detail in connection with petitioner's renewed claims and those he contends are new.

### RENEWED CLAIMS

■ Petitioner does not claim to have good cause for renewing the vast majority of the previously rejected issues. He contends only that approximately seven of these issues either have been "so substantially revised" as to constitute "new" claims or are supported by "new and persuasive authority". Brief of Petitioner, at 2.[4] A material intervening change in the law would constitute good cause to permit a successive petition under RAP 16.4(d). *In re Taylor, supra* at 688 (quoting *Sanders v. United States, supra* at 16–17). Simply "revising" a previously rejected legal argument, however, neither creates a "new" claim nor constitutes good cause to reconsider the original claim. As the Supreme Court observed in *Sanders,* "identical grounds may often be proved by different factual allegations. So also, identical grounds may be supported by different legal arguments, . . . or be couched in different language, . . . or vary in immaterial respects". (Citations omitted.) *Sanders v. United States, supra* at 16. Thus, for example, "a claim of involuntary confession predicated on alleged psychological coercion does not raise a different 'ground' than does one predicated on physical coercion". *Sanders,* at 16.

---

[4]The list of issues petitioner sets forth in the introduction to his opening brief as new, revised, or supported by new authority does not correspond exactly with the manner in which he presents the issues in the argument portion of the brief. We have examined all of petitioner's issues in order to determine whether they were raised in any of the prior proceedings. See appendix.

Petitioner's "revised" arguments in support of his previously rejected claims similarly do not constitute new or different grounds for relief. Additionally, the case law he cites as "new" is for the most part inapposite.

His renewed challenge to the proportionality of his death sentence, however, does involve intervening developments in our approach to proportionality review. Petitioner's direct appeal was only the second case in which we were required to conduct the proportionality review required by RCW 10.95.130. *See State v. Campbell,* 103 Wn.2d 1, 25, 691 P.2d 929 (1984), *cert. denied,* 471 U.S. 1094 (1985); *Jeffries* I, at 430.[5] The several capital cases we have decided since that time have given us both a larger database of potentially "similar cases" and an opportunity to refine our proportionality analysis. *See State v. Rupe,* 108 Wn.2d 734, 767, 743 P.2d 210 (1987), *cert. denied,* 486 U.S. 1061 (1988); *State v. Rice,* 110 Wn.2d 577, 627, 757 P.2d 889 (1988), *cert. denied,* 109 S. Ct. 3200 (1989); *State v. Harris,* 106 Wn.2d 784, 799, 725 P.2d 975 (1986), *cert. denied,* 480 U.S. 940 (1987); *State v. Mak,* 105 Wn.2d 692, 755, 718 P.2d 407, *cert. denied,* 479 U.S. 995 (1986). Since application of that analysis in petitioner's case would serve the ends of justice, we will address the merits of this issue. *See In re Taylor, supra* at 688 (issue decided on direct appeal will be addressed in subsequent personal restraint petition if to do so would serve the ends of justice).[6]

■■ Petitioner contends that his sentence is disproportionate to the prison terms imposed in numerous aggravated first degree murder cases in which the State did not seek the death penalty. The proportionality of a particular

---

[5]While proportionality review is required by RCW 10.95.130, it is not required by the Eighth Amendment. *Pulley v. Harris,* 465 U.S. 37, 79 L. Ed. 2d 29, 104 S. Ct. 871 (1984).

[6]This does not mean that any refinement in our analytical approach to a legal issue will justify reconsideration of a previously rejected claim. Whether the ends of justice would be served by reconsideration will depend upon the nature of the issue raised, the extent to which the refinement constitutes a change in the law, and the seriousness of the consequences of error.

defendant's death sentence does not depend upon the State's seeking the death penalty in every case, however, or even in some threshold proportion of cases. The charging decision must be based, in each case, on the prosecutor's assessment of the State's ability to prove there are insufficient mitigating circumstances to merit leniency. RCW 10.95.040(1); *State v. Campbell, supra* at 25; *State v. Bartholomew,* 104 Wn.2d 844, 849, 710 P.2d 196 (1985). A jury's decision to impose a death sentence must similarly be based on the jurors' determination that the State has met its burden of proof. *See* RCW 10.95.060(4), .080(1); *State v. Mak, supra.*

The purpose of proportionality review is not to second–guess evidentiary determinations or value judgments inherent in prosecutors' charging decisions or juries' verdicts in other cases. The purpose is instead to ensure that a death sentence is not "affirmed where death sentences have not generally been imposed in similar cases, nor where it has been 'wantonly and freakishly imposed.'" *State v. Rupe, supra* at 767 (quoting *State v. Harris, supra* at 798). A proper definition of the universe of "similar cases" is essential to a meaningful determination of these questions and requires a careful examination of the circumstances of the crimes and the defendants' personal characteristics. *State v. Rupe, supra* at 768–70; *State v. Rice, supra* at 625–28. Simply comparing numbers of victims or other aggravating factors may superficially make two cases appear similar, where in fact there are mitigating circumstances in one case to explain either a jury's verdict not to impose the death penalty or a prosecutor's decision not to seek it. *See State v. Mak, supra* at 724–25 (mitigating circumstances shown as to one of two codefendants convicted of the same murders).

One of the cases petitioner and the dissent cite as "similar" provides a good example of this point. *State v. Kincaid,* 103 Wn.2d 304, 306–11, 692 P.2d 823 (1985). In *Kincaid,* the State did not seek the death penalty against a

defendant who killed his wife and sister–in–law. While the number of victims may suggest that *Kincaid* is a "similar case", there are several pertinent distinguishing features. The killings in *Kincaid* were committed following an emotional marital breakup rather than in the course of another crime. Additionally, the defendant attempted to kill himself after the murders, and he presented a diminished capacity defense at trial which led the jury to convict him only of second degree murder for one of the killings. Considering all of the pertinent facts, we do not find *Kincaid* to be "similar" to the present case for purposes of proportionality review. *See State v. Rupe, supra* at 769; *State v. Rice, supra* at 626 (*Kincaid* not included in the universe of "similar" multiple murder cases).

With respect to the proven aggravating factors—multiple premeditated murders committed during another felony—*Rupe* and *Rice* are both "similar" to the present case. *State v. Rupe, supra* at 769; *State v. Rice, supra* at 626. Indeed, the similarities between this case and *Rupe* make the universe of similar cases we defined there equally pertinent here. It is therefore unnecessary to reexamine reported murder cases or the reports filed pursuant to RCW 10.95-.130 in order to define the appropriate universe. We also decline to reconsider petitioner's proportionality claims based on assertedly similar new murder cases. Engaging in that inquiry would result in a never ending sentence review.

Considering the universe of similar cases we considered in *Rupe* in upholding his death sentence, petitioner's sentence is also neither excessive nor disproportionate. His artistic talent does not distinguish him from Rupe, who was involved in community service projects prior to his crimes. Moreover, unlike petitioner, Rupe relied on a lack of prior criminal history as a mitigating factor. *Rupe*, at 770.

In sum, petitioner's death sentence is neither excessive nor disproportionate when compared to the death sentences this court has since upheld in similar cases.

## "New" Issues

As noted above, we will not consider even a "new" issue raised in a successive petition if the petitioner abuses the writ by raising that issue. *In re Haverty, supra* at 503 (following *Sanders v. United States, supra*).[7]

■ Contrary to the suggestions on page 499 of Justice Brachtenbach's concurring/dissenting opinion, we are not creating "a per se rule that the advancing of new issues in successive petitions constitutes an abuse of the [writ]". We hold only that, if the petitioner was represented by counsel throughout postconviction proceedings, it is an abuse of the writ for him or her to raise, in a successive petition, a new issue that was "available but not relied upon in a prior petition". *Kuhlmann v. Wilson*, 477 U.S. 436, 444 n.6, 91 L. Ed. 2d 364, 106 S. Ct. 2616 (1986). Not every "new" issue will meet this description. If the claim is based upon newly discovered evidence, for example, or upon intervening case law, it would not have been "available" in the prior petition. If, on the other hand, counsel was fully aware of the facts supporting the "new" claim when the prior petition was filed, and there are no pertinent intervening developments, raising the "new" claim for the first time in a successive petition constitutes needless piecemeal litigation and, therefore, an abuse of the writ. *See Hamilton v. Vasquez*, 882 F.2d 1469, 1473 (9th Cir. 1989).

We now apply this test to each of the claims petitioner describes as new. (We identify and number these issues as they appear in petitioner's brief.)

"5. Newly discovered evidence." Brief of Petitioner, at 88. This claim involves evidence that the manager of a travel agency in Sequim saw three "very sinister looking" men in a big Buick with California license plates on the morning of March 19, 1983 (the last day the victims were

---

[7]This rule applies only to successive personal restraint petitions. A constitutional issue that was available but not relied upon on *appeal* may be raised in the first personal restraint petition. *In re Hews*, 99 Wn.2d 80, 660 P.2d 263 (1983).

seen alive.) Clerk's Papers, at 34. One of the men came inside the travel agency and asked for an address on Barr Road Extension and showed the manager a telephone number. She did not know where Barr Road Extension was and offered to call the number for the man. He grabbed the paper back and drove to a nearby gas station, presumably to get directions. Clerk's Papers, at 35.

Defense counsel presented this evidence to the trial court in 1983, in support of an unsuccessful motion for new trial. Report of Proceedings 15C, at 23. The issue was therefore available to petitioner and his attorneys when he filed his first and second personal restraint petitions. To raise the issue for the first time in his third petition is an. abuse of the writ.

Additionally, "newly discovered evidence" is grounds for relief in a personal restraint proceeding only if "[m]aterial facts exist which have not been previously presented and heard, which in the interest of justice require vacation of the conviction [or] sentence . . .". RAP 16.4(c)(3). The evidence petitioner relies upon was "presented and heard" by the trial court more than 6 years ago and does not "in the interests of justice require vacation" of his conviction or death sentence.

Such relief would be merited only if, among other things, the evidence would have been admissible at trial and would probably have changed the outcome. *E.g., State v. Williams,* 96 Wn.2d 215, 223, 634 P.2d 868 (1981). In order to present the evidence of the three "sinister looking" men at trial, petitioner would first have had to lay a foundation tending to clearly point to those men as the guilty parties. *State v. Mak, supra* at 716. In its oral ruling denying the motion for new trial, the trial court noted that "Barr Road Extension is not the Barr Road, the place of these crimes" and that there was "absolutely no evidence at all that . . . there was a Buick with California plates at or near the scene of the crime". Report of Proceedings 15C, at 23. As

we pointed out on appeal, there was a great deal of evidence placing petitioner at the scene of the crimes and in possession of the victims' money and property the day following their disappearances. *Jeffries I*, at 401–09.

"6. Prejudicial testimony: petitioner in jail." Brief of Petitioner, at 96. This issue involves a prosecution witness' statement that he first heard of petitioner when petitioner was in jail in Canada. Report of Proceedings 4C, at 113. Defense counsel immediately objected to this remark and moved for a mistrial. The trial court directed the jury to disregard the remark, using language suggested by defense counsel, but denied the motion for a mistrial. As with the newly discovered evidence issue, this claim, which was known to trial counsel, was available to petitioner in the prior personal restraint proceedings. He is abusing the writ by raising the issue only now.[8]

"9. Mitigating circumstances (plural)." and "10. Having in mind the crime." Brief of Petitioner, at 107, 121. These two claims involve the jury interrogatory required by RCW 10.95.060(4): "Having in mind the crime of which the defendant has been found guilty, are you convinced beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency?" Petitioner contends that the use of the plural "circumstances" required the jury to find at least two mitigating circumstances in order to vote against the death penalty. He also argues that beginning the inquiry with the phrase "having in mind the crime"

---

[8]Petitioner suggests that *Johnson v. Mississippi*, 486 U.S. 578, 100 L. Ed. 2d 575, 108 S. Ct. 1981 (1988) justifies his decision to raise this issue now and to renew a claim of juror misconduct involving the alleged discovery of his prior robbery conviction. We cannot agree. The defendant's prior conviction in *Johnson* was admitted at trial, with the attendant approval of the trial court, and was used as one of the statutory aggravating factors to support the death penalty. When the defendant thereafter prevailed in a postconviction proceeding challenging the prior conviction, the Supreme Court held that the death sentence must also be vacated. Here petitioner has not proven any constitutional infirmity in his prior conviction. Nor was the conviction admitted at trial to prove any statutory or nonstatutory aggravating factors.

invalidly limits the jury's consideration of mitigating factors to circumstances relating to the crime itself, thus eliminating consideration of factors relating to the defendant's personal characteristics.

Petitioner did not make these particular arguments at trial, on appeal, or in his previous personal restraint petitions, although he was aware of the wording of the jury interrogatory on appeal and challenged it on other grounds at that time. *Jeffries* I, at 420–23. The legal theories underlying his present challenges to the same interrogatory are not based on intervening case law, and could have been identified and argued when he filed the prior petitions. This also is an abuse of the writ.[9]

"14. Waiver of right to counsel." Brief of Petitioner, at 161. Petitioner next claims he invalidly waived his right to counsel in the penalty phase by requesting counsel not to present some available evidence in mitigation. Although this argument was not raised in either of the previous personal restraint petitions, petitioner relied on the same facts in his second petition to support a claim that his attorneys represented him ineffectively by acceding to his wish not to present evidence in mitigation. *See Jeffries* III, at 331–35 (rejecting that argument). Since the related theory of an invalid waiver of counsel was available when the prior petition was filed, petitioner's attempt to create a "new" ground for relief by reframing a previously rejected claim constitutes an abuse of the writ.[10]

"29. Adamson procedural bar." Brief of Petitioner, at 282. Petitioner's final "new" claim is premised on an amicus curiae brief the State of Washington and other western states filed in support of Arizona's petition for certiorari in

---

[9]Additionally, to the extent petitioner is simply revising his previously rejected challenges to the interrogatory, he is not raising a new ground for relief within the meaning of RAP 16.4(d).

[10]Moreover, this court's holding that petitioner was adequately represented by counsel necessarily defeats the contention that he waived either his right to counsel or his right to effective assistance.

*Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir. 1988). Amici apparently expressed concern that, if the Ninth Circuit's decision invalidating Arizona's death penalty statute is upheld, other statutes, including Washington's, would be vulnerable to similar attacks. Petitioner contends that the State is now procedurally barred from arguing in support of Washington's death penalty statute. Since this claim is based on circumstances which arose after petitioner's first two petitions were dismissed, it could not have been raised in those proceedings.

The claim is also frivolous. The asserted procedural bar can have no effect unless it is tied to petitioner's own renewed challenges to Washington's death penalty statute; there is no reason for the State to argue the validity of the statute unless it is challenged.[11] We rejected several challenges to the statute in one or more of petitioner's prior proceedings, and he has not shown "good cause" to reconsider those issues. RAP 16.4(d). To the extent he is now relying on *Adamson* as cause to reconsider those arguments, his reliance is misplaced. The Ninth Circuit acknowledged that the pertinent portions of the invalid Arizona statute are different from Washington's statute, which it had previously upheld. *Adamson v. Ricketts, supra* at 1043 n.51 (distinguishing *Campbell v. Kincheloe,* 829 F.2d 1453 (9th Cir. 1987).

CONCLUSION

With respect to all but one of petitioner's renewed claims,[12] we dismiss the petition for a failure to show good cause as required by RAP 16.4(d). Five additional issues[13]

---

[11]Since admissions on legal points are not binding on this court, *e.g., Folsom v. Spokane Cy.,* 111 Wn.2d 256, 261–62, 759 P.2d 1196 (1988), the State's amicus brief creates no procedural bar in any event.

[12]Issues numbered 1 through 4, 7, 8, 11, 12, and 15 through 28 in petitioner's brief. See appendix.

[13]Issues numbered 5, 6, 9, 10, and 14 in petitioner's brief. See appendix.

are dismissed as an abuse of the writ. As to the proportionality issue,[14] the petition is dismissed on the merits. The "*Adamson* bar" issue[15] presents no additional substantive claim and does not constitute good cause to renew any other claims.

### APPENDIX

Using petitioner's numbering, these are the claims he raises in the present proceeding. The issues he characterizes as new are designated with asterisks.

(1) "Failure to change venue/juror misconduct." Brief of Petitioner, at 3. Rejected in *Jeffries* I, at 409–10, *Jeffries* II, and *Jeffries* III, at 346 & n.6.

(2) "Insufficient evidence: aggravating circumstance." Brief of Petitioner, at 26. Rejected in *Jeffries* I, at 407–08, and *Jeffries* III, at 345.

(3) "Failure to define aggravating circumstances." Brief of Petitioner, at 63. Rejected in *Jeffries* I, at 418–20, and *Jeffries* III, at 345.

(4) "Failure to require unanimous verdict, guilt phase." Brief of Petitioner, at 78. Rejected in *Jeffries* III, at 336–40.

*(5) "Newly discovered evidence." Brief of Petitioner, at 88. Not previously raised in an appellate court.

*(6) "Prejudicial testimony: petitioner in jail." Brief of Petitioner, at 96. Not previously raised in an appellate court.

(7) "Weapons unrelated to charged offense." Brief of Petitioner, at 99. Rejected in *Jeffries* I, at 412–13.

(8) "Failure to prosecute by indictment." Brief of Petitioner, at 106. Rejected in *Jeffries* I, at 423–24.

*(9) "Mitigating circumstances (plural)." Brief of Petitioner, at 107. Not raised in this manner previously.

*(10) "Having in mind the crime." Brief of Petitioner, at 121. Not raised in this manner previously.

(11) "Jury inappropriately allowed to consider any relevant factors." Brief of Petitioner, at 126. Rejected a very similar argument in *Jeffries* I, at 422.

(12) "Failure to require jury to articulate mitigating circumstances; jury's determination not rationally reviewable." Brief of Petitioner, at 135. Rejected in *Jeffries* I, at 426–27.

---

[14]Petitioner's issue number 13.

[15]Petitioner's issue number 29.

(13) "Proportionality review: A. No methodology for conducting review; B. Sentence disproportionate." Found sentence proportionate in *Jeffries* I, at 430.

*(14) "Waiver of right to counsel." Brief of Petitioner, at 161. Not previously raised.

(15) "Ineffective assistance of counsel." Brief of Petitioner, at 170. Rejected in *Jeffries* III, at 331–35.

(16) "Prosecutorial misconduct during penalty phase closing argument, comments on: failure to testify, appeals, system gives due process, opinion of guilt, eye for an eye." Brief of Petitioner, at 202. Rejected in part in *Jeffries* I, at 415–17, and in remaining part in *Jeffries* III, at 340.

(17) "Prosecution allowed to seek different punishment for same crime." Brief of Petitioner, at 224 (erroneously listed as a second issue 16). Rejected in *Jeffries* I, at 428.

(18) "Prosecutor's discretion to seek death not guided." Brief of Petitioner, at 237. Raised in *Jeffries* I, as part of prosecutorial discretion argument rejected at page 428 (see Brief of Appellant, cause 50062–2, at 183–93).

(19) "Unequal administration of the law." Brief of Petitioner, at 250. Same as issues 17 and 18.

(20) "Jury not asked if death appropriate sentence." Brief of Petitioner, at 253. Indistinguishable from claim, rejected in *Jeffries* I, at 425, that statute creates invalid mandatory death penalty. See issue 22 below.

(21) "Failure to require unanimous verdict, penalty phase." Brief of Petitioner, at 260. Rejected in *Jeffries* I, at 421.

(22) "Death penalty mandatory where no mitigating circumstances." Brief of Petitioner, at 264. Rejected in *Jeffries* I, at 425.

(23) "Burden of proof placed on petitioner in penalty phase." Brief of Petitioner, at 264. Rejected in *Jeffries* I, at 426.

(24) "Failure to instruct regarding petitioner not testifying." Brief of Petitioner, at 265. Rejected in *Jeffries* I, at 423.

(25) "Jury not instructed that it could consider sympathy." Brief of Petitioner, at 267. Rejected in *Jeffries* I, at 423.

(26) "Failure to instruct jury not to consider vengeance." Brief of Petitioner, at 271. Rejected in *Jeffries* I, at 423.

(27) "Failure to instruct on presumption of mitigating circumstances." Brief of Petitioner, at 279. Rejected in *Jeffries* I, at 422.

(28) "Report of trial judge." Brief of Petitioner, at 279. Rejected in *Jeffries* I, at 427–28.

*(29) "Adamson procedural bar." Brief of Petitioner, at 282. Not previously raised.

CALLOW, C.J., and ANDERSEN, DURHAM, and SMITH, JJ., concur.

BRACHTENBACH, J. (concurring in part; dissenting in part)—I concur in the majority opinion except with regards to the definition of the "abuse of the writ" concept adopted by the majority. I disagree with the rule adopted by the majority, at page 492, which creates a per se rule that the advancing of new issues in successive petitions constitutes an abuse of the personal restraint process.

The majority holds:

> that, if the petitioner was represented by counsel throughout postconviction proceedings, it is an abuse of the writ for him or her to raise, in a successive petition, a new issue that was "available but not relied upon in a prior petition". *Kuhlmann v. Wilson*, 477 U.S. 436, 444 n.6, 91 L. Ed. 2d 364, 106 S. Ct. 2616 (1986).

Majority, at 492. The majority's definition of the abusive writ category supports its dismissal of five "new" issues raised by petitioner. Majority at 492-95.

The majority incorrectly and unnecessarily expands the concept of "abuse of the writ," and does so by relying on unclear and nonbinding[16] federal case law. The federal cases relied upon by the majority do not define "abuse of process" as expansively as does the majority. Nor have the federal courts clearly or consistently explained the abusive writ concept, making reliance on the federal approach premature.

To support its adoption of a "per se" rule, the majority cites *Kuhlmann v. Wilson*, 477 U.S. 436, 91 L. Ed. 2d 364, 106 S. Ct. 2616 (1986), but fails to note that the section of the opinion upon which it relies was concurred in by only four Supreme Court Justices. The Eleventh Circuit recently noted that the *Kuhlmann* plurality was not binding and did not control preexisting law. *Martin v. Dugger*, 891 F.2d 807, 809 (11th Cir. 1989). Explaining generally the effect of plurality opinions, the Supreme Court has said "[w]hen a

---

[16]Although reliance on interpretations of similar federal postconviction relief rules is appropriate in certain instances, *e.g., In re Haverty*, 101 Wn.2d 498, 503, 681 P.2d 835 (1984), those federal principles are certainly not binding on this court. *See In re Mercer*, 108 Wn.2d 714, 719, 741 P.2d 559 (1987).

fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . ..'" *Marks v. United States*, 430 U.S. 188, 193, 51 L. Ed. 2d 260, 97 S. Ct. 990 (1977).

Closer examination of federal cases further exposes the majority's error. The federal courts distinguish between "successive" applications for postconviction relief, which are dismissed because they are based on grounds previously heard and determined,[17] and petitions raising new issues or issues not previously decided on their merits, which may be dismissed only upon a showing that the applicant for relief is abusing the writ. *Sanders v. United States,* 373 U.S. 1, 12, 10 L. Ed. 2d 148, 83 S. Ct. 1068 (1963).

In *Hamilton v. Vasquez,* 882 F.2d 1469 (9th Cir. 1989), the Ninth Circuit, relying on *Sanders* to explain dismissal of a petition on the ground that it abused the writ, said:

> A federal court need not consider habeas claims previously unlitigated in federal court if it determines that the petitioner (1) made a conscious decision deliberately to withhold them from a prior petition, (2) is pursuing needless piecemeal litigation, or (3) has raised the claims only to vex, harass, or delay. . . . Where there is no affirmative indication in the record that the petitioner made a conscious decision deliberately to withhold his claim, proceed by piecemeal litigation, to vex or harass or annoy the court or the state, a second petition raising a new claim is not an abuse of the writ.

(Citations omitted.) *Hamilton,* at 1473.

*Sanders* made clear an applicant's conduct may disentitle him to the relief he seeks because dismissal of a writ as abusive is based upon equitable principles. *Sanders,* at 17. Thus, an applicant's *deliberate* withholding of grounds when he files his first application for relief and his *deliberate* abandonment of a ground at an earlier hearing are examples of conduct disentitling an applicant to relief.

---

[17]RAP 16.4(d) regulates petitions raising grounds previously heard and determined. *See In re Haverty,* 101 Wn.2d at 501–03.

*Sanders,* at 18. This is because "[n]othing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay." *Sanders,* at 18.

Unfortunately, a majority of the Supreme Court Justices have not agreed as to any further clarification of the abusive writ concept recognized in *Sanders.* On several occasions some of the Justices have inferred that dismissal on the basis of abuse of the writ does not require any showing of deliberate misconduct. *See, e.g., Woodard v. Hutchins,* 464 U.S. 377, 379 n.3, 78 L. Ed. 2d 541, 104 S. Ct. 752 (1984) (Powell, J., concurring) (despite the fact that there was no affirmative evidence in the record showing deliberate withholding, when a petitioner did not offer any explanation for having failed to raise new claims in a prior petition and he had counsel throughout his case, the petition constituted an abuse of the writ). *But see Rose v. Lundy,* 455 U.S. 509, 521, 71 L. Ed. 2d 379, 102 S. Ct. 1198 (1982) (Powell, J., plurality) (Federal Habeas Corpus Rule 9(b)'s "abuse of the writ" standard supported dismissal of a second writ raising new issues when "a prisoner . . . decides to proceed [in his first habeas corpus writ] only with his exhausted claims and deliberately sets aside his unexhausted claims").

Most recently, "abuse of the writ" was referenced, again by a plurality, in a footnote of *Kuhlmann v. Wilson,* 477 U.S. 436, 91 L. Ed. 2d 364, 106 S. Ct. 2616 (1986). There, Justice Powell, citing *Sanders,* said, "where a prisoner files a petition raising grounds that were available but not relied upon in a prior petition, . . . the federal court may dismiss the subsequent petition on the ground that the prisoner has abused the writ." *Kuhlmann v. Wilson, supra* at 444 n.6.

Other Justices maintain that continued adherence to *Sanders* requires a showing of deliberate misconduct for a petition to be dismissed as abusive. For example, in *Rose v. Lundy, supra,* after reviewing the legislative history of the

rule and focusing on *Sanders,* Justice Brennan, joined by Justice Marshall, said:

> . . . *Sanders* made it crystal clear that dismissal for "abuse of the writ" is *only* appropriate when a prisoner was free to include all of his claims in his first petition, but *knowingly* and *deliberately* chose not to do so in order to get more than "one bite at the apple." The plurality's interpretation obviously would allow dismissal in a much broader class of cases than *Sanders* permits.

*Rose,* at 536 (Brennan, J., concurring in part, dissenting in part). Likewise, in *Woodard v. Hutchins, supra* at 383, Justices White and Stevens rejected any rule that would make a second habeas corpus petition a "per se" abuse of the writ.

Here, the majority concludes that the petitioner abuses the personal restraint process merely because he relies on issues that were available, but not raised, earlier. As noted this characterization of the concept of abuse of process is, at most, supported only by a plurality of the Justices of the United States Supreme Court. A reading of the *Kuhlmann* plurality as standing for the proposition that raising a new issue in a subsequent petition automatically abuses the writ is certainly not the narrowest reading of the Court's holding, and, as the Court has not overruled *Sanders,* it is more appropriate to follow the *Sanders* explanation of the abusive writ and require a showing of deliberate misconduct before determining that a petitioner is abusing the writ.

The ABA Standards Relating to Post–Conviction Remedies also support this approach. The Standards demand, at the very least, some evidence of deliberate misconduct before a petition is dismissed as an abuse of process.

> The Advisory Committee recommends generally that no such claim should be denied for failure to present it at a prior time unless the withholding of the claim is so serious as to amount to abuse of process by the applicant. . . . Deliberate and wilful trifling with the courts by inexcusable fragmentation of litigation need not be tolerated. In finding any claim unmeritorious on the ground of abuse of process, a court should be confident that the previous omission was intentional and inexcusable.

*ABA Standards Relating to Post–Conviction Remedies,*
Std. 2.1, Commentary at 35–36 (Approved Draft, 1968).

Denial of relief to applicants on the basis of abuse of the remedy ought to be cautiously adjudicated. The recommended limitation is an affirmative defense, to be pleaded and proved by the state. Since the doctrine is equitable in nature, the courts ought to have discretion to determine, once the facts have been fully developed, whether the gravity of any abuse established is sufficient to justify deprivation of a remedy.

*ABA Standards Relating to Post–Conviction Remedies,*
Std. 2.4, Commentary at 48 (Approved Draft, 1968).

Recently enacted RCW 10.73.140 provides a standard for consideration of subsequent personal restraint petitions. The statute requires a petitioner who files a subsequent petition raising a new issue to demonstrate good cause why the grounds were not raised previously. While not applicable here,[18] the Legislature has directed inquiry into the reason why a petitioner failed to raise an issue previously. Thus, the Legislature did not intend to bar subsequent petitions by way of an automatic per se rule such as the one adopted by the majority.

Missing from the majority's definition of an abuse of the postconviction process is any reference to deliberate or willful misconduct on the part of petitioner. The majority has eliminated any inquiry into the reason why petitioner did not earlier advance his five "new" issues. This completely disregards the underlying justification, recognized in *Sanders v. United States,* 373 U.S. 1, 10 L. Ed. 2d 148, 83 S. Ct. 1068 (1963), *Hamilton v. Vasquez,* 882 F.2d 1469 (9th Cir. 1989), the ABA Standards, and recent Washington legislation, for dismissing the application for relief on the grounds of abuse of process, *i.e.,* the principle that misconduct on the part of a petitioner disentitles him to equitable relief.

I would hold that when determining whether a personal restraint petition is an abusive petition, inquiry must be made as to the reasons why an issue was not raised earlier,

---

[18]This legislation was not effective when petitioner filed this petition.

and dismissal requires a showing that the petitioner deliberately or intentionally proceeded by piecemeal litigation for the purpose of vexing, harassing, or annoying the court or the state.

UTTER and DOLLIVER, JJ., concur in that portion of Justice Brachtenbach's opinion which discusses the "abuse of writ" concept.

UTTER, J. (concurring in part, dissenting in part)—I agree with the majority's interpretation of the universe of similar cases to be utilized in proportionality review under RCW 10.95.130(2)(b). Nevertheless, I disagree with the majority's conclusion that Jeffries' death sentence is proportionate to the punishment imposed in similar cases considering both the crime and the defendant. Accordingly, I dissent.

The majority recognizes that we must follow the terms of the statute. The statute defines similar cases as:

> cases reported in the Washington Reports or Washington Appellate Reports since January 1, 1965, in which the judge or jury considered the imposition of capital punishment regardless of whether it was imposed or executed, and cases in which reports have been filed with the supreme court under RCW 10.95.120 . . ..

RCW 10.95.130(2)(b). RCW 10.95.120 requires the trial judge to file a report with the Supreme Court for every aggravated murder conviction. Thus, the universe of similar cases to be examined includes cases in which the death penalty was considered as well as cases in which the death penalty was not sought by the State.

In *State v. Jeffries,* 105 Wn.2d 398, 717 P.2d 722, *cert. denied,* 479 U.S. 922 (1986) (*Jeffries* I), the majority concluded that similar cases did not include cases where the death penalty was not sought by the prosecutor. Thus, the proportionality review was based on only four cases in which the death penalty was imposed.

In *State v. Harris,* 106 Wn.2d 784, 725 P.2d 975 (1986), *cert. denied,* 480 U.S. 940 (1987), the court, in doing proportionality review, noted three similar cases in which the death penalty had not been sought. In *State v. Rupe,* 108 Wn.2d 734, 743 P.2d 210 (1987), *cert. denied,* 486 U.S. 1061 (1988), the court explicitly stated that similar cases include cases where the prosecutor had not sought the death penalty.

Accordingly, Jeffries is before this court again for a new proportionality review. However, the majority still fails in its comparison of this case to similar cases.

The majority's comparison is faulty because it relies on *State v. Rupe, supra,* and *State v. Rice,* 110 Wn.2d 577, 757 P.2d 889 (1988), *cert. denied,* 109 S. Ct. 3200 (1989). These two cases relied on *Jeffries* I to demonstrate that the death sentences imposed were not disproportionate. Since the proportionality review of *Jeffries* I is invalid because the universe of similar cases was incorrectly defined, the proportionality reviews in *Rupe* and *Rice* are called into doubt. The majority relies on cases that in turn relied on an invalid analysis, which analysis this present case is supposed to correct. The majority engages in circular argument by doing so. It is illogical to use *Jeffries* to prove the validity of *Rice* and *Rupe* and then use *Rice* and *Rupe* to prove the validity of *Jeffries.* This makes *Jeffries* self–justifying.

Moreover, it is difficult to see how *Rice* is similar in any respect to *Jeffries* for purposes of proportionality review. In *Rice,* the defendant stabbed and bludgeoned a family of four, including two children, and the jury found three aggravating circumstances as to each count of aggravated first degree murder. Although two of the aggravating circumstances found in *Rice* are the same as found in *Jeffries,* the court must take into consideration the defendant and the nature of the crime as well as the aggravating factors. The majority finds *Rice* similar on the basis of aggravating factors alone. Majority, at 491.

The majority again fails to consider the entire universe of similar cases. The majority mentions only *Rupe* and *Rice* as similar cases, and ignores all but one of the cases I outlined in my dissent in *Jeffries* I. Of the nine double–murder cases I described in that dissent, in seven, the death penalty was not sought, and in the other two, the jury found sufficient mitigating factors to merit leniency. *See State v. Guloy,* 104 Wn.2d 412, 705 P.2d 1182 (1985) (execution slaying of two union reformers—death penalty not sought), *cert. denied,* 475 U.S. 1020 (1986); *State v. Kincaid,* 103 Wn.2d 304, 692 P.2d 823 (1985) (husband killed wife and sister–in–law after marital breakup—death penalty not sought); *State v. Dictado,* 102 Wn.2d 277, 687 P.2d 172 (1984) (execution slaying of two union reformers—death penalty not sought); *State v. Carothers,* 84 Wn.2d 256, 525 P.2d 731 (1974) (retired husband and wife shot—unanimous jury declined to impose death penalty); *State v. Carey,* 42 Wn. App. 840, 714 P.2d 708 (1986) (defendant convicted of arson murder of wife and son—death penalty not sought); *State v. Martin,* 41 Wn. App. 133, 703 P.2d 309 (defendant killed fiance's parents after she called off marriage—jury declined to impose death penalty), *review denied,* 104 Wn.2d 1016 (1985); State v. Harris, King County cause 85–1–00093–1 (sentenced Aug. 25, 1986) (defendant killed fiance and a nurse, and attempted murder of two others—death penalty not sought); State v. Defrates, Mason County cause 84–1–00120–8 (sentenced Mar. 6, 1985) (defendant pleaded guilty to murder of sister–in–law and her brother—death penalty not sought); State v. Brown, King County cause 82–1–03429–7 (sentenced Apr. 13, 1983) (defendant killed common law wife and her uncle—death penalty not sought). The majority examines only *State v. Kincaid, supra,* and finds it not similar.

Since *Jeffries* I was decided, trial courts have filed with the Supreme Court seven reports of convictions by a jury of aggravated first degree murder where there were two victims. In four, the State did not seek the death penalty; in three, the jury could not agree on the death penalty. All

seven defendants received life without the possibility of parole. See State v. Rice (Herbert), Yakima County cause 88–1–00427–2 (sentenced Jan. 5, 1990); State v. Sullens, Okanogan County cause 88–1–00195–1 (sentenced Sept. 15, 1989); State v. Hutchinson, Island County cause 87–1–00080–1 (sentenced July 17, 1989); State v. Baja, King County cause 88–1–03833–0 (sentenced Feb. 7, 1989); State v. Thompson, Grays Harbor County cause 88–1–00014–2 (sentenced Oct. 3, 1988); State v. Petersen, Pierce County cause 85–1–01855–1 (sentenced June 17, 1986); State v. Strandy, Clark County cause 85–1–00487–6 (sentenced Oct. 4, 1985), aff'd, 49 Wn. App. 537, 745 P.2d 43 (1987).

Although these cases may or may not be in the appropriate universe of similar cases because of other factors, it is incumbent upon the court to review them to reach that initial determination of what universe is to be considered. This the majority fails to do.

The majority declines to look at what it calls "similar new murder cases." Majority, at 491. If by new murder cases, the majority means cases that were decided after *Jeffries* I, then *Rice* is also a new case that the majority should not consider. Rice's conviction and proportionality review occurred after Jeffries' conviction and first proportionality review. Although Rupe was convicted before Jeffries, his proportionality review occurred after *Jeffries* I. Thus, for purposes of proportionality review, *Rupe* is also a new case compared to *Jeffries*. Moreover, the statute does not differentiate between old and new murder cases. The statute requires the court to look at all cases reported since 1965 and all cases in which reports have been filed under RCW 10.95.120. RCW 10.95.130(2)(b). Presumably, this means all cases up to the point at which the proportionality review takes place. Thus, this court must look at all available cases, not just the ones that allow the court to reach the result it wants. The majority's comment that it need not go beyond *Rupe* and the cases used there to define the appropriate universe of similar cases is an abdication of the statutory duty.

508

For the reasons stated in my dissent in *Jeffries* I, the imposition of the death penalty in Jeffries' case is disproportionate to other multiple victim aggravated murder convictions.

The majority indulges in an examination of questionable similar cases that fails to take into account the appropriate universe of similar cases, or to create a principled methodology for conducting proportionality review. Therefore, I concur only with the majority's enunciation of the definition of the term "similar cases". I dissent from the majority's application of that definition to this case.