IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of: | ) | No. 36033-4-III |
| | ) | |
| NICHOLAS SWECKER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Petitioner. | ) | |

PENNELL, A.C.J. — Nicholas Swecker seeks relief from personal restraint imposed

for his 2003 Spokane County convictions of first degree murder and second degree

burglary. On direct appeal, this court affirmed Mr. Swecker's convictions. *See State v.*

*Swecker*, noted at 115 Wn. App. 1007 (2003). In this petition filed more than one year

after the judgment became final, Mr. Swecker contends he is entitled to resentencing

based on newly discovered evidence in the form of scientific advancements regarding

brain development of late adolescents.

## FACTS AND PROCEDURE[1]

On the morning of January 24, 2001, police officers responded to a report of a

possible homicide and robbery at Spokane Indoor Raceway & Hobbies (Raceway). They

found the storeowner, David Mapston, shot to death in a back room and observed that

radio-controlled cars and candy had been taken from the store. Investigators discovered

---

[1] The facts are well-known to the parties and those pertinent to this petition are
summarized where possible from our decision in Mr. Swecker's direct appeal.

unusual boot and tennis shoe tracks inside Raceway and matching tracks in the fresh snow at the building's entrance.

One day later, police detained Nicholas Swecker and two other individuals for suspicion of vehicle prowling outside of a Spokane supermarket. Police arrested Mr. Swecker for driving while his license was suspended and also arrested the other two individuals, Curtis Nickel and Scott Lawson. Mr. Nickel was arrested on outstanding warrants and Mr. Lawson was arrested for possession of drug paraphernalia. During searches incident to the arrests, the officers found radio-controlled car parts in Mr. Nickel's pocket, a model car motor and checks addressed to Raceway in Mr. Lawson's pocket, and candy wrappers in the car's back seat. All three suspects were transported to the jail for questioning concerning their involvement in the Raceway homicide. As Mr. Swecker walked from the patrol car into the jail, he left tracks in the snow that matched the tennis shoe tracks found at Raceway.

During his first interview with the police, Mr. Swecker denied any involvement with the Raceway crimes. After Mr. Nickel and Mr. Lawson implicated Mr. Swecker in the homicide, Mr. Swecker confessed during a second interview that he had been involved in a robbery that ended in murder when he and the victim had struggled for a gun that Mr. Swecker had brought to the Raceway. Mr. Swecker indicated that he fled the

2

scene, but later returned to the premises with Mr. Nickel to steal items of value, including model car parts. He also told the police that he had been hired by an unnamed individual to rob Raceway in exchange for $1,500, and that he had gone to Raceway on a previous occasion to perform the robbery but failed to complete the robbery due to Raceway being closed.

The State charged Mr. Swecker, who was 22 years old at the time of the offenses,[2] by amended information with first degree murder, second degree burglary, and first degree unlawful possession of a firearm.[3] During trial, Mr. Swecker admitted that he had performed the robbery after being hired to do so and that he had previously confessed to shooting the victim. However, he claimed that some other person (who he refused to identify) had shot Mr. Mapston. The jury found Mr. Swecker guilty of first degree murder and second degree burglary. The court imposed a high-end standard range of 493 months confinement.

---

[2] Mr. Swecker's opening brief indicates he was age 23 at the time of the incident, but the State asserts that Mr. Swecker was in fact 22 years and 4 months old. Mr. Swecker did not address this disparity in his reply brief, and since his argument concerns whether his age reduced his culpability, we assume for purposes of his argument that he was 22.

[3] The State also charged Mr. Swecker with a count of possession of ephedrine or pseudoephedrine with intent to manufacture methamphetamine but later dropped this charge.

3

Mr. Swecker timely appealed his June 2001 judgment and sentence. In January 2002, he filed a motion in the superior court to vacate the judgment and for a new trial based on alleged juror misconduct. The motion was transferred to this court for consideration as a personal restraint petition.

Several months later, Mr. Swecker filed another motion to vacate, claiming he had newly discovered evidence. The trial court denied the motion and the appeal of that ruling was consolidated with Mr. Swecker's pending direct appeal. In June 2002, Mr. Swecker filed a personal restraint petition, alleging that defense counsel provided ineffective assistance of counsel by failing to raise the issue of Mr. Swecker's competency at trial. This petition was also consolidated with the direct appeal. *See Swecker*, noted at 115 Wn. App. 1007 (2003). On January 14, 2003, this court affirmed Mr. Swecker's convictions and dismissed the personal restraint petitions. *Id.*

While the consolidated appeal was pending, Mr. Swecker moved in the trial court to amend his sentence based on alleged errors in calculating his offender score. This court authorized the trial court to enter an amended judgment and sentence nunc pro tunc. The amended judgment and sentence, which imposed a high-end sentence of 450 months confinement based on the adjusted offender scores, was entered on January 6, 2003.

Mr. Swecker then appealed the amended sentence, contending the trial court erred in counting multiple prior juvenile offenses separately although they were sentenced on the same date in 1996. This court determined that the trial court properly counted the 11 juvenile offenses separately when it calculated the offender scores for his current offenses. *State v. Swecker*, noted at 121 Wn. App. 1001 (2004), *affirmed on other grounds*, 154 Wn.2d 660, 115 P.3d 297 (2005). The case was final on the date of its mandate: August 12, 2005.

Mr. Swecker filed three pro se petitions that this court dismissed. *See* Order Dismissing Personal Restraint Petition, *In re Pers. Restraint of Swecker*, No. 22550-0-III (Wash. Ct. App. Apr. 13, 2004); Order Dismissing Personal Restraint Petition, *In re Pers. Restraint of Swecker* No. 23367-7-III (Wash. Ct. App. Sept. 15, 2005); Order Dismissing Personal Restraint Petition, *In re Pers. Restraint of Swecker*, No. 34098-8-III (Wash. Ct. App. Mar. 30, 2016). He subsequently filed another petition for collateral relief in July 2017, this time represented by counsel Jeffrey Ellis. This court dismissed that petition as untimely. *See* Order Dismissing Personal Restraint Petition, *In re Pers. Restraint of Swecker*, No. 35489-0-III (Wash. Ct. App. May 4, 2018), *review denied*, No. 95916-1 (Wash. Aug. 13, 2018).

Mr. Swecker, through Mr. Ellis, originally filed what would become the current petition as a CrR 7.8 motion for relief from judgment in Spokane County Superior Court.[4] Mr. Swecker claimed he was entitled to resentencing pursuant to *In re Personal Restraint of Light-Roth*, 200 Wn. App. 149, 401 P.3d 459 (2017). The superior court transferred the motion to this court for consideration as a personal restraint petition. This court stayed the petition pending the Supreme Court's review of *Light-Roth*. The stay was subsequently lifted when the Supreme Court issued its decision in *In re Personal Restraint of Light-Roth*, 191 Wn.2d 328, 422 P.3d 444 (2018), but immediately stayed again pending the Supreme Court's decision in *In re Personal Restraint of Meippen*, 193 Wn.2d 310, 440 P.3d 978 (2019).

In the meantime, Mr. Swecker filed a motion to lift the stay and allow him to file a new personal restraint petition in place of the transferred CrR 7.8 motion, in large part to explain why his petition was timely given the Supreme Court's ruling in *Light-Roth*. A panel of this court granted the motion.

## ANALYSIS

To prevail in this personal restraint petition, Mr. Swecker must show that he was actually and substantially prejudiced either by an error of constitutional magnitude or by a

---

[4] The CrR 7.8 motion was filed on April 24, 2018.

fundamental nonconstitutional error that caused a complete miscarriage of justice. *In re*

*Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013). Mr. Swecker may

not rely on conclusory allegations, but must show with a preponderance of competent,

admissible evidence that the error caused him prejudice. *In re Pers. Restraint of Ruiz-*

*Sanabria*, 184 Wn.2d 632, 636, 362 P.3d 758 (2015). Since Mr. Swecker filed this

petition more than one year after the judgment and sentence became final, it is barred as

untimely under RCW 10.73.090(1) unless he shows that the judgment and sentence is

invalid on its face, the court lacked competent jurisdiction, or the petition is based solely

on one or more of the exceptions set forth in RCW 10.73.100.

Mr. Swecker contends his petition is timely pursuant to RCW 10.73.100(1), which

provides that the time bar does not apply to a petition based solely on newly discovered

evidence where the defendant acted with reasonable diligence. When raised as a separate

ground, "newly discovered evidence" may justify relief in a personal restraint petition if

the new facts "in the interest of justice require vacation of the conviction, sentence, or

other order entered in a criminal proceeding." RAP 16.4(c)(3); *In re Pers. Restraint of*

*Lord*, 123 Wn.2d 296, 319, 868 P.2d 835 (1994). The standard applied under RAP

16.4(c)(3) for a new sentencing proceeding is also the same as that applied to a motion for

new trial based upon newly discovered evidence. *In re Pers. Restraint of Brown*, 143

Wn.2d 431, 453, 21 P.3d 687 (2001). The petitioner must establish "'that the evidence (1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; *and* (5) is not merely cumulative or impeaching.'" *Lord*, 123 Wn.2d at 319-20 (quoting *State v. Williams*, 96 Wn.2d 215, 222-23, 634 P.2d 868 (1981)).

Mr. Swecker claims that recent advances in the understanding of the neurodevelopment deficits applicable to late adolescents constitutes newly discovered evidence. He relies on *In re Personal Restraint of Fero*, 190 Wn.2d 1, 409 P.3d 214 (2018) to argue that advances in science may constitute newly discovered evidence where the new evidence would also probably change the result at trial or at sentencing. In support of his petition, he submitted a declaration from Dr. Laurence Steinberg, a developmental psychologist specializing in adolescence, which summarizes recent scientific advancements and concludes that late adolescents share attributes of adolescents under 18 such that they should be afforded the same constitutional protections the Supreme Court has already recognized for individuals under 18. Mr. Swecker argues that he is entitled to resentencing so he may request a mitigated sentence based on these scientific advancements.

As an initial matter, the State contends Mr. Swecker's petition must be dismissed as an abuse of the writ. A prisoner's second or subsequent personal restraint petition that raises a new issue for the first time will not be considered if raising that issue constitutes an abuse of the writ. *In re Pers. Restraint of Jeffries,* 114 Wn.2d 485, 487-88, 789 P.2d 731 (1990). "[I]f the petitioner was represented by counsel throughout postconviction proceedings, it is an abuse of the writ for him or her to raise . . . a new issue that was 'available but not relied upon in a prior petition.' " *Id.* at 492 (quoting *Kuhlmann v. Wilson,* 477 U.S. 436, 444 n.6, 106 S. Ct. 2616, 91 L. Ed. 2d 364 (1986)). Generally, no abuse of the writ will be found where a claim is based on newly discovered evidence because the claim would not have been "available" when the earlier petition was filed. *Id.* However, if "counsel was fully aware of the facts supporting the 'new' claim when the prior petition was filed, and there are no pertinent intervening developments, raising the 'new' claim for the first time in a successive petition constitutes needless piecemeal litigation and, therefore, an abuse of the writ." *Id.*

Here, Mr. Ellis previously filed a petition on Mr. Swecker's behalf in 2017 that did not raise the current claim based on newly discovered evidence. The State contends that the allegedly new evidence existed prior to counsel's filing of the July 2017 petition, as

9

evidenced by the Steinberg declaration's citation to references pre-dating the 2017 petition, and should therefore be dismissed.

The Steinberg declaration, dated August 29, 2018, and appended to Mr. Swecker's October 29, 2018, petition, states that in the past 10 years, scientific evidence has accrued that late adolescents have many aspects of "psychological and neurobiological immaturity" that are characteristic of early and middle adolescents. Pers. Restraint Petition, Declaration of Laurence Steinberg at 3. The declaration further notes that the notion that brain maturation continues into late adolescence became widely accepted among neuroscientists by 2015. While it is true that the declaration includes citations to references authored as early as 2003, it also cites several references from 2016, 2017 and 2018, indicating that the science regarding this issue has evolved over time. Given that the acceptance of this science was still relatively new when counsel filed the prior petition in 2017, and that additional articles on this issue have been published since 2017, this court declines to find that the petition is procedurally barred by the abuse of the writ doctrine.

The State also challenges Mr. Swecker's characterization of the advancements in understanding of juvenile brain science as "new evidence," arguing that this is not a new

subject matter but is akin to making new applications out of previously established scientific principles.

This court does not reach the issue of whether the scientific advancements at issue constitute "new evidence" for purposes of RCW 10.73.100(1) because Mr. Swecker fails to demonstrate that the evidence is material to his case or that it would likely change the result at sentencing.

The declaration from Dr. Steinberg states "The scientific question I have been asked to address is whether individuals between 18 and 21 share the attributes of adolescents under 18 that trigger the constitutional protections the Supreme Court has already recognized for mid-adolescents." *Id.* The declaration opines that late-adolescents, defined as 18-20 years olds, are similar to early and middle adolescents in terms of their behavior, psychological functioning and brain development. It further states that certain aspects of brain development affecting judgment and decision-making continue "at least until age 21." Id. at 6.

This evidence, expressly limited to those individuals between the ages of 18-21, is not material to Mr. Swecker's case. Mr. Swecker was 22 at the time of the offenses, and therefore outside the age range contemplated by Dr. Steinberg's declaration. He has presented no evidence expressly extending these findings to someone over the age of 21.

Moreover, Dr. Steinberg offers no opinion with respect to Mr. Swecker specifically. Accordingly, Mr. Swecker fails to demonstrate that the scientific advancements at issue apply to his sentence.

He also fails to demonstrate that this evidence would likely have changed the result at sentencing. While it is true that Mr. Swecker could argue for a mitigated sentence based on this evidence, such an argument would require the court to extend application of the science, limited to those under the age of 21, to an individual who was 22. Moreover, the alleged deficits of late adolescent brain immaturity are not relevant to the circumstances of Mr. Swecker's crimes. Contrary to Mr. Swecker's argument that the motive for the crime was to obtain model cars and candy, the record demonstrates that Mr. Swecker in fact agreed to commit the crime in exchange for $1,500. He attempted to rob Raceway on a prior occasion and chose to return and carry out the robbery on a different date. This was not an impulsive adolescent crime to obtain candy and toys but was instead a planned endeavor to commit a crime in exchange for money. There is no evidence in the record regarding Mr. Swecker's alleged immaturity, and he fails to demonstrate reduced culpability based on his age.

Mr. Swecker fails to demonstrate that the newly discovered evidence exception applies to his petition. Accordingly, we dismiss Mr. Swecker's petition as untimely.

12

No. 36033-4-III
*In re Pers. Restraint of Swecker*


A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____, A.C.J.
Pennell, A.C.J.

WE CONCUR:

_____,  J.        _____, J.
Siddoway, J.                                 Fearing, J.

13