101 P.3d 854 (2004)
153 Wash.2d 44
In the Matter of the Personal Restraint Petition of Richard Garrett TURAY, Petitioner.
No. 74556-1.
Supreme Court of Washington, En Banc.
Argued May 25, 2004.
Decided November 18, 2004.
*855 Sheryl Gordon McCloud, Seattle, for Petitioner/Appellant.
Norman Kim Maleng, Brooke Elizabeth Burbank, Deputy, David J.W. Hackett, Deputy, Seattle, for Appellee/Respondent.
MADSEN, J.
Personal restraint petitioner Richard G. Turay seeks release from civil commitment as a sexually violent predator, arguing that the State was required but failed to plead and prove a recent overt act at his commitment trial. We dismiss Turay's personal restraint petition as an abuse of the writ.

FACTS
On October 19, 1994, Turay was committed as a sexually violent predator under the community protection act, chapter 71.09 RCW. His history of sexually violent crimes includes convictions for third degree rape committed in 1977, second degree rape in 1979, and second degree rape in 1985. On October 24, 1989, he was released on parole. Parole was revoked after Turay was found guilty of committing fourth degree assault June 5, 1990, on a woman flight attendant staying in a hotel, and of failing to submit to a polygraph. Turay was returned to the Department of Corrections to complete his sentence on the 1979 rape.
On December 15, 1993, while Turay was still incarcerated, the King County Prosecutor petitioned for Turay's commitment as a sexually violent predator. The petition did not allege that Turay had committed a "recent overt act," an act that either caused harm of a sexually violent nature or created a reasonable apprehension of such harm.
At the commitment trial[1] the court instructed the jury that to find Turay to be a sexually violent predator, the State had to prove that Turay had been convicted of a crime of sexual violence (rape in the second degree) and that he suffered from a mental abnormality that makes him likely to engage in predatory acts of sexual violence. The jury was not instructed as to a "recent overt act." The jury returned a verdict finding Turay to be a sexually violent predator. The court ordered Turay committed as a sexually violent predator.
Turay challenged his commitment by both appeal and personal restraint petition, consolidated in In re Detention of Turay, 139 Wash.2d 379, 415-22, 986 P.2d 790 (1999) (Turay I). The personal restraint petition repeated the same claims made in the appeal, except for an untimely challenge to the 1977 conviction. The court dismissed the personal restraint petition after determining that Turay's *856 appeal was timely and he therefore had an adequate remedy for all of the claims in the personal restraint petition except the untimely challenge to the 1977 conviction. Turay I, 139 Wash.2d at 394-95, 395 n. 11, 986 P.2d 790. The court affirmed the commitment order. Turay filed a second personal restraint petition, arguing that the community protection act violated double jeopardy principles "as applied" because the conditions of his confinement were punitive. On September 7, 2001, the court dismissed this personal restraint petition as frivolous in light of the decision in Seling v. Young, 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001). In May 2002, Turay filed a third personal restraint petition in the Court of Appeals. Following transfer of the petition to this court, it was dismissed as a mixed petition that included a claim time barred under RCW 7.36.130(1) (which incorporates the time allowed in RCW 10.73.090 and RCW 10.73.100 for filing a petition). In re Pers. Restraint of Turay, 150 Wash.2d 71, 74 P.3d 1194 (2003) (Turay II).
On October 1, 2003, Turay filed this, his fourth, personal restraint petition.

ANALYSIS
The State contends that Turay's personal restraint petition should be dismissed as an abuse of the writ. Initially, we agree with the United States Supreme Court that the government has the burden of pleading abuse of the writ. McCleskey v. Zant, 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Thus, we conclude under state law that before we will consider dismissing a personal restraint petition on the basis that it constitutes an abuse of the writ, the State must allege an abuse of the writ, note the petitioner's prior history of personal restraint petitions, and identify the claims that appear for the first time.
A prisoner's second or subsequent personal restraint petition that raises a new issue for the first time will not be considered if raising that issue constitutes an abuse of the writ. In re Pers. Restraint of Jeffries, 114 Wash.2d 485, 487-88, 789 P.2d 731 (1990). We have held that "if the [defendant] was represented by counsel throughout postconviction proceedings, it is an abuse of the writ for him or her to raise ... a new issue that was `available but not relied upon in a prior petition.'" Jeffries, 114 Wash.2d at 492, 789 P.2d 731 (quoting Kuhlmann v. Wilson, 477 U.S. 436, 444 n. 6, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986)).[2] No abuse of the writ will be found where a claim is based on newly discovered evidence or intervening changes in case law because they would not have been "available" when the earlier petition was filed. Jeffries, 114 Wash.2d at 492, 789 P.2d 731. However, "[i]f ... counsel was fully aware of the facts supporting the `new' claim when the prior petition was filed, and there are no pertinent intervening developments, raising the `new' claim for the first time in a successive petition constitutes needless piecemeal litigation and, therefore, an abuse of the writ." Id.
*857 RCW 10.73.140, which concerns the Court of Appeals' jurisdiction to decide successive personal restraint petitions raising new issues, does not apply to personal restraint petitions filed in this court. In re Pers. Restraint of Johnson, 131 Wash.2d 558, 566, 933 P.2d 1019 (1997). Thus, the only direct bar to raising new issues in this court is the abuse of the writ doctrine. In re Pers. Restraint of Stoudmire, 141 Wash.2d 342, 352, 5 P.3d 1240 (2000).
Before a person can be civilly committed, due process requires proof that he or she is both mentally ill and presently dangerous. Addington v. Texas, 441 U.S. 418, 426, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); In re Pers. Restraint of Young, 122 Wash.2d 1, 27, 857 P.2d 989 (1993) (citing Addington and Foucha v. Louisiana, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992)). In 1993 we held that a sex predator petition for involuntary commitment of a nonincarcerated person must include an allegation of a recent overt act sufficient to establish probable cause, when considered together with other factors in RCW 71.09.040, to believe that the person is a sexually violent predator. Young, 122 Wash.2d at 41-42, 857 P.2d 989. Proof of a recent overt act serves to establish current dangerousness. In re Det. of Albrecht, 147 Wash.2d 1, 11, 51 P.3d 73 (2002). However, where the individual is incarcerated prior to commitment, the requirement that the State allege and prove a recent overt act would be impossible to meet. Thus, no evidence of a recent overt act is required in these circumstances because due process does not require that the absurd be done before a compelling state interest may be vindicated. Young, 122 Wash.2d at 27, 857 P.2d 989.
Following Young, the court considered whether the recent overt act requirement applies under particular circumstances. In re Detention of Henrickson, 140 Wash.2d 686, 2 P.3d 473 (2000) involved two cases where individuals found to be sexually violent predators were released into the community after their sexually violent offenses but before they were incarcerated on those offenses. Both individuals were incarcerated for their sex offenses at the time the State filed sexually violent predator petitions. We held "that when, at the time the petition is filed, an individual is incarcerated for a sexually violent offense, or for an act that itself would have constituted a recent overt act, due process does not require the State to prove a further overt act occurred between arrest and release from incarceration." Henrickson, 140 Wash.2d at 697, 2 P.3d 473. In Albrecht, the petitioner had served the part of his sentence calling for incarceration and had been released on community placement. He violated the conditions of community placement, and while he was in total confinement for this violation the State petitioned for his commitment as a sexually violent predator. The State did not allege or prove a recent overt act. We held that under these circumstances due process required that the State prove a recent overt act because the individual had been released into the community after completing his or her period of incarceration on the violent sex offense and was incarcerated for a community placement violation that the record did not establish was itself a recent overt act.
Turay argues that Albrecht controls his case, reasoning that like the petitioner in Albrecht, he was released into the community following incarceration on a sexually violent offense. He maintains that because the State failed to plead and prove a recent overt act, his commitment as a sexually violent predator violates due process. The State says, however, that this case is more like Henrickson, reasoning that after parole was revoked Turay was in total confinement on a sexually violent offense  the 1979 second degree rape  at the time the petition for commitment was filed. See Henrickson, 140 Wash.2d at 697, 2 P.3d 473 (no proof of a recent overt act is required when the individual is incarcerated for a sexually violent offense at the time the petition is filed).
The issue Turay has raised was not raised in his first or second personal restraint petitions.[3] Additionally, the State argues *858 that it is an issue that was available at the time he filed his earlier petitions. We agree. Contrary to Turay's argument, Albrecht simply applied the holding in Young regarding the State's obligation to prove a recent overt act. Young was decided before Turay's commitment, and thus he could have argued that the State was required to allege and prove a recent overt act. The rule established in Young has remained the same through Albrecht and Henrickson. Proof of current dangerousness, through proof of a recent overt act, is required unless the individual is incarcerated for a violent sexual offense or an act that itself constitutes a recent overt act.
Turay maintains, however, that availability for purposes of abuse of the writ means the "new case" relied upon was available when the earlier petition was filed, citing In re Personal Restraint of Greening, 141 Wash.2d 687, 700, 9 P.3d 206 (2000). He argues that since his claim is based on two cases, Albrecht and Henrickson, that had not been decided before he raised his "recent overt act" claim, the claim was not previously available and he has not abused the writ.
Greening does not support Turay's argument. In Greening, the petitioner's firearms enhancements were imposed consecutively. At the time he was sentenced a Court of Appeals decision construed the relevant former statute to mean the enhancements had to be imposed consecutively to each other. After the petitioner was sentenced, but before he filed his first personal restraint petition, we overturned the Court of Appeals' decision. Thereafter, the petitioner filed his first personal restraint petition and then the second petition at issue in Greening. We said our decision on the firearms enhancements was a significant intervening change in the law for purposes of the exception to the time bar in RCW 10.73.090-100, but determined, for abuse of the writ purposes, that the "decision" was "available" when the petitioner filed the first petition. Greening, 141 Wash.2d at 697-98, 700-01, 9 P.3d 206. We found no abuse of the writ, however, since the petitioner was not represented by counsel throughout postconviction proceedings.
We did not adopt a new standard in Greening that turns on whether the specific case relied on was available at the time the earlier petition was filed. When discussing availability, we specifically quoted Jeffries' language referring to a "`new issue that was "available but not relied"'" on in the earlier petition. Greening, 141 Wash.2d at 700, 9 P.3d 206 (emphasis added) (quoting Jeffries 114 Wash.2d at 492, 789 P.2d 731) (quoting Kuhlmann, 477 U.S. at 444 n. 6, 106 S.Ct. 2616). We determined that our firearm enhancement case did not involve a pertinent intervening change in the law, see Jeffries, 114 Wash.2d at 492, 789 P.2d 731, since the case was filed, and thus the change in the law occurred, before the petitioner filed his first personal restraint petition. Greening does not support the proposition that unavailability is shown merely because the petitioner relies on a case that was not decided when the earlier petition was filed.
Whether the particular cases Turay relies on had been decided is not the critical point  the critical question is whether the issue itself was available. For example, in Delo v. Stokes, 495 U.S. 320, 321-22, 110 S.Ct. 1880, 109 L.Ed.2d 325 (1990), the Court concluded that the abuse of the writ doctrine applied to preclude a stay of execution sought for the purpose of filing a successive habeas petition where the petitioner relied on *859 equal protection principles that were not novel and could have been developed earlier.
If intervening case law has made a claim available that was not previously available, then we would not find an abuse of the writ. However, the claim that Turay makes was available under Young.
Next, Turay's counsel maintained in oral argument that our reliance on Kuhlmann in Jeffries means that we have also adopted a requirement that counsel deliberately withheld the issue in the prior petition before an abuse will be found under state law. We do not agree. Jeffries itself did not apply such a standard. Instead, the court found abuse of the writ with regard to two issues on the basis that the "legal theories underlying [the petitioner's] present challenges to [a jury interrogatory regarding mitigating circumstances were] not based on intervening case law, and could have been identified and argued when [the petitioner] filed the prior petitions." Jeffries, 114 Wash.2d at 494-95, 789 P.2d 731 (issues 9 and 10). There was no discussion of whether any of the issues had been deliberately withheld.
We are aware that dictum in Stoudmire indicates that under Jeffries an abuse of the writ should not be found unless the failure to raise the issue earlier was a delaying tactic. Stoudmire, 141 Wash.2d at 352, 5 P.3d 1240.[4] As explained, however, Jeffries does not support this view and it is not consistent with the goals of finality and avoiding piecemeal litigation that underlie the abuse of the writ doctrine. Instead, we find compelling for state law purposes the United States Supreme Court's determination that an abuse of the writ can occur where a petitioner fails to raise a claim in a previous petition through inexcusable neglect. McCleskey, 499 U.S. at 489, 111 S.Ct. 1454.[5]
Of course, an inexcusable neglect standard necessarily implies that some failures to raise an issue in an earlier personal restraint petition may be excused. When McCleskey was decided, the Court determined that the same cause and prejudice standard would apply to the failure to raise a claim as applies to excuse in federal habeas proceedings the procedural default of a claim in state court. Thus, to excuse the failure to raise an issue in an earlier petition, the petitioner had to show objective cause, i.e., some external impediment preventing the construction or raising of the claim, such as government interference or the reasonable unavailability of the factual or legal basis for the claim, and actual prejudice. McCleskey, 499 U.S. at 493-95, 497-98, 111 S.Ct. 1454. The Court directed that the showing of cause in the abuse of the writ context required the petitioner to "conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first" petition. Id. at 498, 111 S.Ct. 1454. A narrow exception allowed for consideration of a successive petition where a convicted petitioner did not meet the cause and prejudice standard if the petitioner demonstrated a fundamental miscarriage of justice, i.e., that the alleged constitutional error probably *860 caused the conviction of an innocent person. Id. at 494-95, 111 S.Ct. 1454. This "actual innocence" exception has been described as "extremely rare" and applicable in "extraordinary case[s.]" Schlup v. Delo, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Court also explained in McCleskey that the burden to establish cause and prejudice is on the petitioner and, if that burden is not met, it is also the petitioner's burden to establish actual innocence where this is asserted. McCleskey, 499 U.S. at 494-95, 111 S.Ct. 1454.
After McCleskey was decided, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA). The Court subsequently reaffirmed that "`the doctrine of abuse of the writ refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions.'" Felker v. Turpin, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (quoting McCleskey, 499 U.S. at 489, 111 S.Ct. 1454). In Felker, the Court held that new restrictions on successive petitions in the AEDPA fell within "the compass of this evolutionary process" and did not violate the suspension clause. Felker, 518 U.S. at 664, 116 S.Ct. 2333. The restrictions in the AEDPA are more stringent in some respects than those articulated in McCleskey. For example, 28 U.S.C. § 2244(b)(2)(B)(ii) requires a showing of actual innocence by clear and convincing evidence.
Under state law, as explained in Jeffries, we recognized that the failure to raise an issue in an earlier petition may be excused where a claim is based on newly discovered evidence or an intervening change in case law that was unavailable when the earlier petition was filed. Jeffries, 114 Wash.2d at 492, 789 P.2d 731. While in extraordinary circumstances there may be other reasons under state law why the failure to raise a claim in an earlier petition may be excused, none is presented in this case. The only reason Turay offers for failing to raise the issue earlier is his argument that Albrecht and Henrickson qualify as pertinent intervening legal developments, but we have rejected this argument.[6]
We also find no basis here for any exception comparable to the actual innocence exception under federal law. Turay is not confined pursuant to a criminal conviction, and there is no issue of innocence to consider.[7] Nor do we find his claim that he was confined in violation of due process sufficient to find an exception in this case. We conclude that it is not enough for Turay to show that the State failed to plead and prove a recent overt act. Instead, to avoid dismissal of this petition on abuse of the writ grounds, he must, at the least, show that when the State confined him he was not presently dangerous. He has not done so.
We dismiss the personal restraint petition as an abuse of the writ.[8]
JOHNSON, IRELAND, BRIDGE, OWENS, FAIRHURST, JJ., concur.
*861 CHAMBERS, J. (concurring in result only).
I respectfully concur with Justice Sanders, and Justice Brachtenbach before him, that our abuse of the writ doctrine has unfortunately strayed from its original purpose. See In re Pers. Restraint of Jeffries, 114 Wash.2d 485, 499-504, 789 P.2d 731 (1990) (Brachtenbach, J., dissenting in part). Originally, the abuse of the writ doctrine allowed courts to dismiss successive petitions for collateral relief based on new arguments when it appeared that the petitioner "(1) made a conscious decision deliberately to withhold them from a prior petition, (2) is pursuing needless piecemeal litigation, or (3) has raised the claims only to vex, harass, or delay." Hamilton v. Vasquez, 882 F.2d 1469, 1473 (9th Cir.1989) (citing Sanders v. United States, 373 U.S. 1, 18, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); Neuschafer v. Whitley, 860 F.2d 1470, 1474 (9th Cir.1988)). This allowed courts to ensure that writs serve their ancient purposes of justice and equity while not rewarding inexcusable neglect by the petitioner. See generally H. Brent McKnight, How Shall We Then Reason? The Historical Setting of Equity, 45 MERCER L.REV. 919, 928 (1994).
Now, the abuse of the writ doctrine has mutated to serve a new purpose; docket management. Dismissing a case on abuse of the writ has become essentially an administrative function, allowing courts to winnow down their dockets. While I have great sympathy for the expanding work load of the judiciary, I concur with Justice Sanders that the touchstone should be equity, and I would allow successive petitions upon a showing of good cause why the argument was not raised earlier.
The purpose of the great writ of habeas corpus (and thus integral to its successor, the personal restraint petition) is to police illegal restraint. See HORACE G. WOOD, A TREATISE ON THE LEGAL REMEDIES OF MANDAMUS AND PROHIBITION, HABEAS CORPUS, CERTIORARI, AND QUO WARRANTO 111, (Charles F. Bridge ed., Fred B. Rothman & Co.3d ed.2002) (1896). The trend toward summary dismissal undermines this vital purpose. I do not favor the creation of new rules, or the reinterpretation of old ones, to create more barriers to habeas relief, however styled.
I respectfully concur in result only.
SANDERS, J. (dissenting).
Absent proof of a recent overt act, Richard Garrett Turay has been unlawfully imprisoned as a sexually violent predator since 1994. However, the majority dismisses Turay's personal restraint petition (PRP) claiming the petition is an abuse of the writ.
Turay had been incarcerated for second degree rape but was later released on parole. After months of freedom he was reincarcerated for a parole violation. At that point the State filed its sexual predator petition, seeking further incarceration under the sex predator statute. He was convicted at trial but without proof of a recent overt act. Turay challenged the judgment by direct appeal and simultaneous personal restraint petition. We dismissed the PRP because it addressed the same issues as the direct appeal. In re Det. of Turay, 139 Wash.2d 379, 384, 986 P.2d 790 (1999).
After Turay lost the appeal he filed a second PRP, arguing this civil commitment statute was unconstitutionally punitive. This court dismissed the second PRP in light of a recent United States Supreme Court case. Turay then filed a third PRP in May 2002, which we dismissed as a mixed petition. In re Pers. Restraint of Turay, 150 Wash.2d 71, 74 P.3d 1194 (2003).
On October 1, 2003, Turay filed his fourth and instant PRP, now at issue.
In re Personal Restraint of Jeffries, 114 Wash.2d 485, 789 P.2d 731 (1990), sets forth the abuse of writ standard: "[I]f the petitioner was represented by counsel throughout postconviction proceedings, it is an abuse of the writ for him or her to raise, in a successive petition, a new issue that was `available but not relied upon in a prior petition.'" 114 Wash.2d at 492, 789 P.2d 731 (quoting Kuhlmann v. Wilson, 477 U.S. 436, 444 n. 6, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986)). Jeffries further explains: "If the claim is based upon *862 newly discovered evidence, for example, or upon intervening case law, it would not have been `available' in the prior petition." Id. (emphasis added).
The touchstone for abuse of the writ is equity, and equity's goal is "`to do substantial justice.'" Hough v. Stockbridge, 150 Wash.2d 234, 236, 76 P.3d 216 (2003) (quoting Carpenter v. Folkerts, 29 Wash.App. 73, 78, 627 P.2d 559 (1981)).
The majority dismisses Turay's current PRP as an abuse of the writ because it allegedly raises a previously available issue. Majority at 857-858. Turay claims the State was required to prove a recent overt act but failed to do so, contrary to intervening case law  our decision in In re Detention of Albrecht, 147 Wash.2d 1, 51 P.3d 73 (2002).
Albrecht was not decided until after Turay filed his previous petitions. [1] Notwithstanding, the majority argues the issue was previously available even if the case was not and, for that reason, the writ is barred. The majority asserts In re Personal Restraint of Young, 122 Wash.2d 1, 857 P.2d 989 (1993), recognized the recent overt act requirement, whereas Albrecht merely applied that rule to a different set of facts. Majority at 857-858. Therefore, concludes the majority, Turay is forever barred from raising the issue of his unconstitutional incarceration for the State's failure to prove a recent overt act.
I disagree. Albrecht is"intervening case law" upon which Turay may now properly rely. That decision was previously unavailable. Turay cannot be faulted for failure to anticipate a decision which was yet to be made.
Young's holding was clear, express, and unequivocal: "we hold that the State must provide evidence of a recent overt act in accord with [In re] Harris [, 98 Wash.2d 276, 654 P.2d 109 (1982)] whenever an individual is not incarcerated at the time the petition is filed." Young, 122 Wash.2d at 41, 857 P.2d 989 (emphasis added). "We conclude that where the individual is currently incarcerated no evidence of a recent overt act is required." Id. (emphasis added).[2]
The literal language of Young established a bright line rule: the State must prove a recent overt act only when the individual is not incarcerated on the day the commitment petition is filed. The physical location of the individual on that date is outcome determinative according to Young. Turay had no claim under Young because he was imprisoned on the day the State filed the commitment petition. Proof of a recent overt act was unnecessary as per Young.
Subsequent to Young, In re Detention of Henrickson, 140 Wash.2d 686, 2 P.3d 473 (2000), repeated this holding. There the State released one defendant into the community pending appeal and the other pending sentencing. Both were incarcerated, however, on the day the commitment petitions were actually filed. We again held that the State need not prove a recent overt act if the individual was incarcerated for a sexually violent crime or for an act that would qualify as a recent overt act on the day the State filed the petition for commitment:
In order to commit a nonincarcerated individual as a sexually violent predator, the State must also prove beyond a reasonable doubt that the individual has committed a recent overt act evidencing his or her status as a sexually violent predator. As long as the individual is in custody on the day the petition is filed, however, the statute does not require proof of a recent overt act.

....
When, on the day a sexually violent predator petition is filed, an individual is incarcerated for a sexually violent offense, or for an act that would itself qualify as a recent overt act, due process does not require the State to prove a further overt act occurred between arrest and release from incarceration.
Henrickson, 140 Wash.2d at 692, 695, 2 P.3d 473 (citations omitted) (emphasis added). Thus Henrickson continued the bright line *863 rule: when someone is incarcerated on the day the petition is filed, no recent overt act need be proved.
Then comes Albrecht. That case changed the law 180 degrees from Young by squarely holding mere incarceration is insufficient to relieve the State of its burden to prove a recent overt act. Albrecht, 147 Wash.2d at 11, 51 P.3d 73. Albrecht served a sentence for second degree child molestation but was then released to community placement. He later violated the conditions of placement and was reincarcerated. At that point the State filed the commitment petition. We held even though Albrecht was incarcerated at the time the petition was filed, due to his previous release the State must plead and prove a recent overt act to satisfy due process: "While due process does not require that the absurd be done, once the offender is released into the community, as Albrecht was, due process requires a showing of current dangerousness." Albrecht, 147 Wash.2d at 10, 51 P.3d 73.
Contrary to Young's bright line rule, Albrecht held the mere fact of incarceration is now insufficient; release into the community preceding the current incarceration requires proof of a recent overt act. Although I would argue the rule in Albrecht is a good one, it cannot be understood from Young or Henrickson. Hence Albrecht was intervening case law not previously "available." Turay should not be penalized for lack of clairvoyance.
Albrecht's dissent even claimed "that the majority is overruling Henrickson" and was uncertain "[w]here the majority opinion leaves our holding in Henrickson." Albrecht, 147 Wash.2d at 15-16, 51 P.3d 73 (Owens, J., dissenting, joined by Ireland & Bridge, JJ.). The same dissenters who characterized Albrecht as a significant change in the law now would leave Turay imprisoned for agreeing with them! Where is the equity or justice in that? Turay does not abuse the writ, but today's majority does.
Even assuming Albrecht is not intervening case law upon which Turay may justifiably rely, the majority also rejects Turay's argument that the omission of an issue in a previous petition must be intentional to abuse the writ, instead of inexcusably neglectful. Majority at 859. The majority sidesteps our language in In re Personal Restraint of Stoudmire, 141 Wash.2d 342, 5 P.3d 1240 (2000): "The court in Jeffries seems concerned with the raising of new issues in successive PRPs as a delaying tactic." Stoudmire, 141 Wash.2d at 352, 5 P.3d 1240; see also In re Pers. Restraint of Greening, 141 Wash.2d 687, 701, 9 P.3d 206 (2000) (since Greening was unrepresented, the court "need not suspect that his failure to effectively raise this claim in his earlier petition was a tactical ploy"). Clearly if filing successive PRPs is a delaying tactic, it is an intentional act in bad faith, not a good faith claim that an intervening development now justifies an argument that may not have been supported before.
The majority relies on federal law to support the inexcusable neglect standard without duly considering the intentional standard developed under our state's jurisprudence. See McCleskey v. Zant, 499 U.S. 467, 489, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). The intentional omission standard best serves the interests of justice by penalizing a party only if his attorney purposely omits a claim. Courts should not tolerate intentionally spawning piecemeal litigation, but they should be ever vigilant to protect the rights of those who seek, in good faith, to vindicate their just legal entitlements.
But even under the inexcusable neglect standard, Turay's petition is proper. The United States Supreme Court has noted two situations in which a court may excuse a procedural default and examine the merits of the case: upon a showing of cause and prejudice, or when there is a fundamental miscarriage of justice. McCleskey, 499 U.S. at 493-94, 111 S.Ct. 1454. The "cause" the Court contemplates is "`some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court," and the prejudice must be "actual." Id. (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). Objective factors include "`a showing that the factual or legal basis for a claim was not reasonably available to counsel.'" Id. at 493-94, 111 S.Ct. 1454 (quoting Murray, 477 *864 U.S. at 488, 106 S.Ct. 2678). The fundamental miscarriage of justice standard is applicable only in "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." McCleskey, 499 U.S. at 494, 111 S.Ct. 1454.
The majority dismisses the cause and prejudice exception as applied to Turay for the same reasons it rejected his Albrecht argument  the majority asserts the law has not changed enough to make Turay's overt act claim previously unavailable. Majority at 860. I disagree for the reasons stated. A significant development of legal authority is an objective cause, and it is good cause to protect anyone from deprivation of liberty absent proof from the State of all necessary elements to justify a civil commitment under the statute and constitution.
Likewise, the majority a priori rejects the fundamental miscarriage of justice standard when applied to civil commitments. The majority reasons that no innocent person can be "punished" when the confinement is "civil," not "criminal." Majority at 860. The majority's argument completely ignores reality and precedent.
The technical distinction between a criminal incarceration and a civil commitment is meaningless to a person in Turay's situation. In both cases, the person is not free to come and go as he pleases, and his liberty has been lost to incarceration. Civil incarceration is, according to the United States Supreme Court, "a massive curtailment of liberty." Humphrey v. Cady, 405 U.S. 504, 509, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972). It makes no difference whether we call the deprivation criminal or civil. In fact, the recent overt act requirement was developed in direct response to "civil" commitment. See In re Harris, 98 Wash.2d 276, 654 P.2d 109 (1982).
Turay's personal restraint petition does not abuse the writ. He is entitled to his day in court to test his incarceration against recent case law developments. The petition should be granted because the State failed to plead and prove an essential element necessary to justify imprisonment. That is also what justice and equity require.
I dissent.
ALEXANDER, C.J., concurs.
NOTES
[1] Turay had an earlier commitment trial where a less than unanimous jury determined he was a sexually violent predator. Following this court's holding in In re Personal Restraint of Young, 122 Wash.2d 1, 48, 857 P.2d 989 (1993) that the legislature intended a unanimous verdict before an individual can be committed as a sexually violent predator, the Court of Appeals remanded his case for a new trial. The personal restraint petition before us concerns commitment following Turay's second trial.
[2] While we relied on federal law in Jeffries, 114 Wash.2d 485, 789 P.2d 731, we note that there is no Sixth Amendment right to counsel in state collateral proceedings after a direct appeal. Pennsylvania v. Finley, 481 U.S. 551, 555-56, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). A majority of federal circuits have held that there is no right to counsel in federal habeas proceedings. Annual Review of Criminal Procedure, Habeas Relief for State Prisoners, 91 GEO. L.J. 817, 854 n. 2645 (May 2003) (citing cases from eight circuits). Accordingly, some federal courts have held that the same standard for abuse of the writ applies to pro se petitioners as to those represented by counsel (whether at the time of the earlier petition(s) or the one at hand). See United States v. Roberson, 194 F.3d 408 (3d Cir.1999); Saahir v. Collins, 956 F.2d 115 (5th Cir.1992); Olds v. Armontrout, 919 F.2d 1331 (8th Cir.1990); Rodriguez v. Maynard, 948 F.2d 684 (10th Cir.1991). Kuhlmann, which this court cited in Jeffries, does not say that an abuse of the writ will be found only where the petitioner was represented by counsel, nor does any other case decided by the United States Supreme Court. Nevertheless, applying the holding in Jeffries, we ruled in In re Personal Restraint of Perkins, 143 Wash.2d 261, 265 n. 5, 19 P.3d 1027 (2001), In re Personal Restraint of Greening, 141 Wash.2d 687, 700, 9 P.3d 206 (2000), and In re Personal Restraint of Stoudmire, 141 Wash.2d 342, 352, 5 P.3d 1240 (2000) that because the petitioners had not been represented by counsel throughout postconviction proceedings, there was no abuse of the writ. Here, Turay has been represented by counsel throughout state and federal collateral proceedings involving his civil commitment as a sex predator.
[3] That the present petition is a second, third, fourth, or successive petition is not dispositive. The abuse of the writ doctrine may apply to dismiss a second or successive petition. Jeffries, 114 Wash.2d at 487-88, 789 P.2d 731. As to state prisoners filing federal habeas petitions, see, for example, McCleskey v. Zant, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (pre-Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) (Pub.L. No. 104-132, 110 Stat. 1214 (1996)) case; second habeas petition constituted abuse of the writ), United States v. MacDonald, 966 F.2d 854 (4th Cir.1992) (same); Moran v. McDaniel, 80 F.3d 1261 (9th Cir.1996) (same), and Torres v. Senkowski, 316 F.3d 147 (2d Cir.2003) (under pre-AEDPA analysis, second habeas petition constituted an abuse of the writ). As to federal prisoners filing motions or petitions under 28 U.S.C. 2255 prior to the AEDPA, see, for example, Andiarena v. United States, 967 F.2d 715 (1st Cir.1992) (McCleskey standard for abuse of the writ applies to § 2255 proceedings; second petition dismissed as abuse of the writ), Whittemore v. United States, 986 F.2d 575 (1st Cir.1993) (same), United States v. Espinoza, 82 F.3d 640 (5th Cir.1996) (same), and United States v. Richards, 5 F.3d 1369 (10th Cir.1993) (same).
[4] We determined in Stoudmire, 141 Wash.2d at 352, 5 P.3d 1240 that the doctrine did not apply because the petitioner was pro se during part of the postconviction proceedings. In a similar vein, the court said in Greening that it need not suspect the petitioner's failure to raise a claim in the earlier petition was a "tactical ploy" since the abuse of the writ doctrine did not apply because the petitioner was not represented by counsel throughout postconviction proceedings. Greening, 141 Wash.2d at 700-01, 9 P.3d 206.
[5] We note that the Court in McCleskey cited federal cases decided in the 1980s for the proposition that "a petitioner may abuse the writ by failing to raise a claim through inexcusable neglect." McCleskey, 499 U.S. at 489, 111 S.Ct. 1454 (citing Jones v. Estelle, 722 F.2d 159 (5th Cir.1983), overruled on other grounds by Saahir v. Collins, 956 F.2d 115 (5th Cir.1992), and Miller v. Bordenkircher, 764 F.2d 245 (4th Cir.1985)). The Court also said that Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) mentioned deliberate abandonment, but did so as one example of conduct disentitling a petitioner to relief. McCleskey, 499 U.S. at 489, 111 S.Ct. 1454. The Court said that in Sanders it had also cited a passage from an earlier case which applied the principle of inexcusable neglect and had said this standard applies in the abuse of the writ context. McCleskey, 499 U.S. at 489, 111 S.Ct. 1454 (citing Sanders, 373 U.S. at 18, 83 S.Ct. 1068 (citing Townsend v. Sain, 372 U.S. 293, 317, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), overruled on other grounds by, Keeney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992))).
[6] In clarifying that an inexcusable neglect standard applies rather than deliberate withholding, we emphasize that an abuse of the writ may be found where there is no ill intent or improper pursuit of goals such as prolonging postconviction review through piecemeal argument. We do not ascribe any such motive to Turay's counsel.
[7] Turay argues that United States Supreme Court cases hold that a state court must provide a forum and consider a due process challenge such as he makes on the merits regardless of procedural bars. He reasons that Fiore v. White, 531 U.S. 225, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001) and Bunkley v. Florida, 538 U.S. 835, 123 S.Ct. 2020, 155 L.Ed.2d 1046 (2003) compel this result. In Fiore the Court held that under the due process clause a state cannot convict a defendant for conduct that its criminal statute, as later interpreted by the state's highest court, did not prohibit; under such circumstances due process is violated by the failure to prove all of the elements of the crime. Fiore, 531 U.S. at 228-29, 121 S.Ct. 712. Bunkley applies the Fiore holding. Neither case supports Turay's contention. First, both are cases involving criminal convictions and both ultimately rest on the principle that one who is actually innocent of a crime cannot be detained for that offense. Turay's is not a criminal case, and there is no issue of actual innocence. Further, neither Fiore nor Bunkley addresses procedural bars such as abuse of the writ. We find nothing in either case commanding that the due process allegation in this case is sufficient to overcome a procedural bar such as the abuse of the writ doctrine.
[8] We grant Turay's motion to take judicial notice of briefing filed in Turay II. In light of our decision, we do not reach the issue raised by the State's cross-motion, and therefore deny it.
[1] We decided Albrecht on August 1, 2002. Turay's most recent PRP before the current one was filed in May 2002.
[2] The legislature codified the recent overt act requirement following Young. See Albrecht, 147 Wash.2d at 8, 51 P.3d 73; RCW 71.09.030(5).