# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 71082-6-I |
| SANTOS W. ORANTES, | ) ) ) ) | DIVISION ONE<br><br>PUBLISHED OPINION |
| Petitioner. | ) ) ) | FILED: February 6, 2017 |

LEACH, J. — For the second time, Santos Orantes collaterally challenges his 2006 judgment and sentence based on his guilty plea. He asks to withdraw this plea because his trial counsel did not accurately advise him about the plea's consequences for his immigration status. The State claims that this challenge is untimely and should have been included in Orantes's first challenge.

Because the Supreme Court's 2010 decision in Padilla v. Kentucky[1] made a "significant change in the law" "material to" Orantes's conviction, Orantes's petition is timely.[2] And because this court's 2012 decision finding Padilla retroactive was an "intervening change[ ] in case law" after Orantes's first challenge, his second challenge can proceed.[3] We remand for the trial court to conduct a reference hearing on the merits of Orantes's claim.

---

[1] 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).

[2] RCW 10.73.100(6).

[3] In re Pers. Restraint of Turay, 153 Wn.2d 44, 49, 101 P.3d 854 (2004); see In re Pers. Restraint of Jagana, No. 66682-7-I, slip op. at 25 (Wash. Ct. App. Aug. 13, 2012), http://www.courts.wa.gov/opinions/pdf/666827.pdf, withdrawn Aug. 21, 2013.

No. 71082-6-I / 2

## FACTS

Orantes is a Salvadoran national with temporary protected status (TPS) in the United States.[4] He has been convicted of two misdemeanors. Federal law makes a person with these convictions ineligible for TPS renewal and thus subject to deportation.[5]

Orantes received his second conviction in 2006, when he pleaded guilty to unlawfully issuing a bank check. The sentencing court imposed a deferred sentence of 364 days of confinement. Orantes's attorney did not advise him that pleading guilty would affect his immigration status. Orantes did not learn that his plea would jeopardize his immigration status until the federal government denied his application to renew his TPS. In 2008, he moved to amend the 2006 judgment and sentence. Acting on counsel's advice, Orantes believed that his immigration problem would be resolved if the court reduced his term of confinement from 364 to 180 days. The court granted this relief. Orantes later learned that his criminal history still made him ineligible for TPS. He is currently in deportation proceedings.

---

[4] This court summarized the factual background at length in an unpublished opinion dismissing Orantes's first petition. In re Pers. Restraint of Orantes, noted at 170 Wn. App. 1006, 2012 WL 3264956. TPS establishes a temporary safe haven in the United States for foreign nationals where their country's conditions prevent them from returning safely. El Salvador is such a country. Orantes, 2012 WL 3264956, at *1.

[5] See 8 U.S.C. § 1254a(c)(2)(B)(i).

-2-

In 2011, Orantes moved to vacate his 2006 conviction, asserting that the trial court had violated his due process rights. He claimed his plea was involuntary and the judgment and sentence void because the trial court failed to advise him of the immigration consequences. Orantes based his argument on Padilla, which the United States Supreme Court decided after his plea and sentence. But he expressly denied making any claim that his trial counsel was ineffective. The trial court dismissed the petition, and we affirmed. We rejected Orantes's due process claim because both Padilla and the Washington Supreme Court's decision in State v. Sandoval[6] decided ineffective assistance of counsel claims, not claims based on a denial of due process.[7]

Orantes again moved for relief from his 2006 conviction in 2013. The trial court transferred his motion to this court to consider as a personal restraint petition (PRP). Orantes claimed that his trial counsel's performance was constitutionally deficient. This court dismissed the petition. The Supreme Court granted discretionary review and remanded to this court for reconsideration in light of its intervening decision, In re Personal Restraint of Yung-Cheng Tsai.[8]

---

[6] 171 Wn.2d 163, 249 P.3d 1015 (2011).
[7] Orantes, 2012 WL 3264956, at *5.
[8] 183 Wn.2d 91, 351 P.3d 138 (2015).

## STANDARD OF REVIEW

A trial court may transfer a motion for relief from judgment under CrR 7.8 to this court for consideration as a PRP "'to serve the ends of justice.'"[9] A PRP is not a substitute for direct appeal, and availability of collateral relief is limited.[10] To obtain relief, the petitioner must first overcome statutory and rule-based procedural bars.[11] We review de novo questions of law that a PRP raises.[12]

## ANALYSIS

Orantes's motion to withdraw his guilty plea is a collateral attack on his 2006 conviction.[13] He now makes an ineffective assistance of counsel claim,[14] asserting that "his attorney failed to inform him that [pleading guilty] would cause him to lose his immigration status and render him deportable . . . and instead assured him that his immigration status would not be affected."

---

[9] State v. Robinson, 153 Wn.2d 689, 696, 107 P.3d 90 (2005) (quoting former CrR 7.8(c)(2) (2003)).

[10] In re Pers. Restraint of Grasso, 151 Wn.2d 1, 10, 84 P.3d 859 (2004).

[11] Grasso, 151 Wn.2d at 10; see RCW 10.73.090; RAP 16.4(d).

[12] In re Pers. Restraint of Wolf, 196 Wn. App. 496, 503, 384 P.3d 591 (2016), petition for review filed, No. 93993-4 (Wash. Jan. 3, 2017).

[13] RCW 10.73.090(2).

[14] To prove ineffective assistance of counsel, an appellant must show that (1) counsel provided representation so deficient that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). A defendant shows prejudice when there is a reasonable probability that but for counsel's errors, the result of the trial would have been different. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

The trial court did not decide the merits of Orantes's claim because it decided that the general one-year statute of limitations for PRPs applied and barred it. We disagree.

RCW 10.73.100(6) Exception to Statute of Limitations

In general, a defendant cannot collaterally attack a judgment and sentence more than one year after it becomes final.[15] RCW 10.73.100 provides several exceptions to this rule. One exception allows a defendant to collaterally attack a judgment after the one-year deadline if the defendant establishes three things: (1) a significant change in the law occurred, (2) that change is material to the defendant's conviction, and (3) that change applies retroactively.[16]

Orantes asserts that this exception applies to his request because the United States Supreme Court's decision in Padilla was a "significant change in the law" that is material to his claim and applies retroactively. We agree.

In Yung-Cheng Tsai, the Washington Supreme Court decided that Padilla made a significant change in our state's law about collateral attacks based on ineffective assistance claims[17] and that Padilla "applies retroactively to matters on collateral review."[18] Thus, Orantes's ineffective assistance of counsel claim

---

[15] RCW 10.73.090(1).
[16] RCW 10.73.100(6).
[17] Yung-Cheng Tsai, 183 Wn.2d at 107.
[18] Yung-Cheng Tsai, 183 Wn.2d at 103.

satisfies the first and third requirements of the exception. This leaves for our decision whether Padilla's change in law is "material to" Orantes's conviction.

The State asserts that Padilla is not material to Orantes's conviction because Washington courts accepted claims like Orantes's before Padilla. It posits that before Padilla Washington courts distinguished between claims that an attorney failed to offer any advice on the immigration consequences of a guilty plea and claims that an attorney offered "mis-advice" regarding immigration consequences. The State asserts that the second type was already available to Orantes before Padilla. We disagree.

First, Padilla itself belies the State's argument. The State's argument that "non-advice" claims were not available until Padilla, whereas "mis-advice" claims were available all along, ignores the obvious: Padilla involved a misadvice claim.[19] Padilla's trial counsel incorrectly informed him that he "'did not have to worry about immigration status since he had been in the country so long.'"[20] The State mistakenly asserts that Padilla changed the law with respect to nonadvice claims but not with respect to the type of claim at issue in that case. Also, the Padilla Court did not make the distinction the State promotes.

Second, a close reading of the pre-Padilla cases shows that Washington courts likely would have rejected Orantes's claim before Padilla.

---

[19] Padilla, 559 U.S. at 359.
[20] Padilla, 559 U.S. at 359 (internal quotation marks omitted).

The State cites only one pre-Padilla decision finding ineffective assistance of counsel, and that case did not involve immigration consequences. The defendant in State v. Stowe[21] was concerned about the consequences of a guilty plea on his military career. His attorney told him that entering an Alford[22] plea would not affect his career. After his conviction, the Army immediately discharged him.[23] In considering Stowe's ineffective assistance claim, Division Two distinguished counsel's failing to inform from providing affirmative misinformation.[24] It concluded that Stowe's counsel's wrong advice "fell below the objective standard of reasonableness" and constituted deficient performance.[25]

Dicta from Division Two's decision the next year in State v. Holley[26] also support the distinction the State makes. A statement in the plea of guilty form that Holley signed informed him that his plea could be grounds for deportation. Holley's attorney mistakenly thought Holley was a U.S. citizen and told him that he could skip that statement because it did not apply to him.[27] Division Two held

---

[21] 71 Wn. App. 182, 184, 858 P.2d 267 (1993).
[22] North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).
[23] Stowe, 71 Wn. App. at 184-85.
[24] Stowe, 71 Wn. App. at 187.
[25] Stowe, 71 Wn. App. at 188-89.
[26] 75 Wn. App. 191, 195, 876 P.2d 973 (1994).
[27] Holley, 75 Wn. App. at 195.

that Holley was entitled to a hearing to rebut the presumption that he was properly advised.[28]

Although the court decided the case on statutory grounds, it addressed Holley's ineffective assistance of counsel claim in dicta.[29] It would have rejected that claim by distinguishing the "faulty advice" Holley received from "the type of affirmative misinformation at issue in Stowe."[30] But the court did not explain how to distinguish faulty advice from affirmative misinformation; both phrases would seem to apply when counsel informs a client that he can sign the plea without reading the immigration advisory because the advisory does not affect him.

Similar dicta in In re Personal Restraint of Yim[31] also support the State's argument. A petitioner, Samphao, was advised at the time of his guilty plea that his plea might subject him to deportation.[32] A verbal exchange at sentencing showed that the prosecutor and trial judge misunderstood the law and thought Samphao would not be deportable and that Samphao's attorney did not know if he would be.[33] Samphao asserted that the prosecutor, trial court, and his attorney affirmatively misrepresented the consequences of his plea, making that

---

[28] Holley, 75 Wn. App. at 200.
[29] Holley, 75 Wn. App. at 198-99; see Yung-Cheng Tsai, 183 Wn.2d at 105-06 (characterizing Division Two's ineffective assistance analysis as dicta).
[30] Holley, 75 Wn. App. at 198-99.
[31] 139 Wn.2d 581, 588, 989 P.2d 512 (1999).
[32] Yim, 139 Wn.2d at 588-90.
[33] Yim, 139 Wn.2d at 589.

plea involuntary.[34] The Supreme Court disagreed, reasoning that deportation is a mere collateral consequence of pleading guilty.[35] Thus, it held, defense counsel had no obligation to advise Samphao that his plea might result in deportation. The court also stated that an affirmative misrepresentation "might" be a basis for setting aside the plea, but it found that the record did not show such a misrepresentation.[36] The court concluded that the trial court's advice to Samphao at the time of his plea was enough to make that plea voluntary.

While dicta in Holley and Yim thus support the State's position, the State cites no decision, nor is this court aware of any, where a Washington court has held that a defendant can obtain relief for ineffective assistance of counsel based on incorrect advice about the immigration consequences of a guilty plea. The line drawn in pre-Padilla Washington cases was not between misadvice and nonadvice but between collateral and direct consequences. Padilla rejected that distinction.[37]

---

[34] Yim, 139 Wn.2d at 587-88.

[35] Yim, 139 Wn.2d at 588; see also State v. Jamison, 105 Wn. App. 572, 591, 20 P.3d 1010 (2001) (noting that ineffective assistance claim would fail because deportation is only collateral consequence but finding in any case that "Jamison was advised categorically by counsel that he would be deported"); State v. Martinez-Lazo, 100 Wn. App. 869, 877-78, 999 P.2d 1275 (2000) (holding defense counsel not ineffective for failing to warn of deportation because deportation is collateral consequence); In re Pers. Restraint of Peters, 50 Wn. App. 702, 705-06, 750 P.2d 643 (1988) (noting same distinction).

[36] Yim, 139 Wn.2d at 588-90.

[37] Sandoval, 171 Wn.2d at 170 n.1. The Supreme Court of Kentucky had held in Padilla "that the Sixth Amendment's guarantee of effective assistance of

Rather than support the State's misadvice–nonadvice distinction, the facts and holdings of pre-Padilla cases indicate that Washington courts would have rejected Orantes's claim before Padilla. Orantes stated in a declaration that his trial counsel advised him that pleading guilty would lead to the best outcome of his case: "[Counsel] mistakenly advised me that pleading guilty would not affect my TPS as long as I was sentenced to less than 365 days of confinement. She never told me that pleading guilty would cause me to lose my immigration status." Counsel's declaration did not mention these affirmative statements but confirmed that while counsel discussed some of the consequences of Orantes's plea with him, she never advised him that the plea would make him ineligible for TPS and probably cause him to lose his immigration status.

These facts are similar to those that courts found insufficient to support due process and ineffective assistance claims in Holley and Yim. As in Holley, the petitioner's attorney advised him to plead guilty while giving him inaccurate advice. Just as Holley's attorney advised him that the deportation advisory did not apply to him, Orantes's attorney told him a guilty plea would not affect his immigration status. Like the petitioner in Yim, Orantes knew that he was at risk of deportation but received a false impression, both from his attorney and from

counsel does not protect a criminal defendant from erroneous advice about deportation because it is merely a 'collateral' consequence of his conviction." Padilla, 559 U.S. at 359-60 (emphasis added). This is the decision the United States Supreme Court reversed.

the trial court and prosecutor, about the particular consequences of his plea. And just as the attorneys and trial court in Yim thought that Samphao would not be deportable "unless he gets 60 months or more," the attorneys and trial court here thought Orantes would not lose TPS unless he got 365 days or more.[38]

Orantes's case also resembles the petitioner's in Sandoval. There, Sandoval's attorney advised him to accept a plea offer because he would not be immediately deported and could obtain immigration counsel to "ameliorate any potential immigration consequences."[39] Division Three, in an unpublished opinion before Padilla, rejected Sandoval's due process claim, relying on Yim's statement that deportation was "merely a collateral consequence."[40] In reversing Division Three's decision, the Supreme Court held that "Padilla has superseded Yim's analysis of how counsel's advice about deportation consequences (or lack thereof) affects the validity of a guilty plea."[41] Notably, the Supreme Court did not distinguish between bad advice and no advice. Like Sandoval's attorney, Orantes's counsel advised him to accept a plea offer, basing that advice on a misunderstanding of the consequences of a guilty plea. Sandoval's collateral

---

[38] This is shown here by the initial, misguided agreement between the trial court, defense counsel, and prosecutor to a 364-day sentence and the subsequent, also misguided agreement to reduce that sentence to 180 days. See Yim, 139 Wn.2d at 589-90.

[39] Sandoval, 171 Wn.2d at 167.

[40] Sandoval, 171 Wn.2d at 170 n.1 (citing In re Pers. Restraint of Sandoval, noted at 145 Wn. App. 1017, 2008 WL 2460282, at *2).

[41] Sandoval, 171 Wn.2d at 170 n.1.

challenge based on these facts failed before Padilla, then succeeded in light of Padilla's changes to the law. Sandoval further demonstrates that Padilla made a change material to Orantes's conviction.

Despite some unfortunate dicta, the Supreme Court's decision in Yung-Cheng Tsai accords with this analysis. The Supreme Court held that one petitioner, Jagana, was entitled to a reference hearing because his attorney failed to give him any guidance about the potential immigration consequences of a guilty plea. It observed that "Washington courts would have rejected Jagana's claim before Padilla." Thus, the court held, Jagana's claim was not time-barred.[42] The other petitioner, Tsai, claimed his attorney "incorrectly advised him about the immigration consequences" of his plea. Tsai had filed his first motion to withdraw, claiming misadvice, in 2008. The trial court found that motion to be untimely and rejected it accordingly, without considering the misadvice claim. Tsai did not appeal. In his collateral attack, Tsai offered no reason to overturn the trial court's procedure-based decision to dismiss his petition. The Supreme Court therefore denied a reference hearing without needing to consider whether Tsai's claim had merit before Padilla.[43]

These were the holdings in Yung-Cheng Tsai. The court also suggested twice that misadvice claims were actionable before Padilla—statements the State

---

[42] Yung-Cheng Tsai, 183 Wn.2d at 107.
[43] Yung-Cheng Tsai, 183 Wn.2d at 107-08.

relies on heavily here—but did not rely on these observations in reaching different results for the two petitioners. In discussing Tsai's petition, the court observed, "Washington courts have long recognized that where a defendant relies on his or her attorney's incorrect advice about the immigration consequences of pleading guilty, the defendant's plea may be rendered involuntary and withdrawn."[44] The court cited only Yim for this observation. As discussed above, the cited portion of Yim was dicta.[45] Moreover, the Tsai court's statement itself was dicta since, as discussed above, the court rejected Tsai's collateral challenge as untimely based on his failure to appeal the dismissal of his original motion to withdraw.

In sum, case law shows that Washington courts likely would have rejected Orantes's challenge before Padilla, just as they rejected claims based on counsel's failure to advise. Padilla's change in the law is thus material to Orantes's conviction.[46]

Because Orantes's claim satisfies the RCW 10.73.100(6) "significant change" exception, the one-year statute of limitations does not bar his ineffective

---

[44] Yung-Cheng Tsai, 183 Wn.2d at 107.

[45] Yung-Cheng Tsai, 183 Wn.2d at 107 (citing Yim, 139 Wn.2d at 588 ("While an affirmative misrepresentation to a defendant regarding the possibility of deportation might constitute a 'manifest injustice' and, thus, provide a basis for setting aside a guilty plea, the record demonstrates that there was no such misrepresentation here." (emphasis added))).

[46] See Sandoval, 171 Wn.2d at 170 n.1.

assistance of counsel claim. We need not address Orantes's request for a hearing on whether his claim is one of misadvice or nonadvice. Nor do we need to consider Orantes's argument that petitioners before Padilla could base their ineffective assistance claims only on affirmative misrepresentations explicitly regarding deportation.

Abuse of the Writ

The State also asserts that this court should dismiss this, Orantes's second petition, as an "abuse of the writ" barred by RCW 10.73.140. We disagree.

A second or subsequent PRP is an "abuse of the writ" if it raises a new issue that was available to the petitioner at the time of filing an earlier petition.[47] If the petitioner's counsel was aware of facts supporting the "new" claim when the petitioner filed the earlier petition and "'no pertinent intervening developments'" occur, then the later petition is an abuse of the writ and barred.[48] No such abuse occurs, however, when the petitioner bases a claim "on newly discovered evidence or intervening changes in case law," as such a claim "would not have been 'available' when the earlier petition was filed."[49]

---

[47] Turay, 153 Wn.2d at 48.
[48] Turay, 153 Wn.2d at 49 (quoting In re Pers. Restraint of Jeffries, 114 Wn.2d 485, 492, 789 P.2d 731 (1990)).
[49] Turay, 153 Wn.2d at 48-49.

-14-

The State points out that the United States Supreme Court decided Padilla in 2010. The State contends that any "intervening changes in case law" thus occurred before Orantes filed his first petition in 2011. We disagree.

This court's opinion in In re Personal Restraint of Jagana[50] was an intervening change in case law. That decision, issued after Orantes's first petition, recognized for the first time that Padilla applied retroactively in Washington state courts to cases on collateral review.[51] This court noted that Padilla had left open whether its rule should apply retroactively and that the question was a subject of debate among federal and state appellate courts. In a thorough analysis, this court agreed with the Third Circuit and the Supreme Court of Massachusetts in finding that Padilla did apply retroactively.[52] Because Jagana was thus an intervening change in case law relevant to Orantes, his second petition's new claim based on Padilla is not an "abuse of the writ."

---

[50] No. 66682-7-I, slip op at 25 (Wash. Ct. App. Aug. 13, 2012), http://www.courts.wa.gov/opinions/pdf/666827.pdf, withdrawn Aug. 21, 2013.

[51] See Jagana, slip op. at 25.

[52] Jagana, slip op. at 12-25. Our Supreme Court remanded Jagana for reconsideration in light of the United States Supreme Court's decision in Chaidez v. United States, ___ U.S. ___, 133 S. Ct. 1103, 1110, 185 L. Ed. 2d 149 (2013), and this court withdrew its opinion. Later, in Yung-Cheng Tsai, our Supreme Court agreed with this court's Jagana holding as a matter of Washington law. Yung-Cheng Tsai, 183 Wn.2d at 103.

The State also contends that Orantes's petition is an abuse of the writ because Orantes chose not to pursue an ineffective assistance of counsel claim in his first petition.

"[A]n applicant's deliberate withholding of grounds when he files his first application for relief and his deliberate abandonment of a ground at an earlier hearing are examples of conduct disentitling an applicant to relief."[53] This rule prevents "'needless piecemeal litigation'" and petitions "'whose only purpose is to vex, harass, or delay.'"[54]

As discussed above, "intervening changes in case law" occurred after Orantes's first petition. Before these changes, it was reasonable for Orantes to think that an ineffective assistance claim based on Padilla was not available to him. His actions in bringing another petition after this court found Padilla to apply retroactively were neither needless nor vexatious. Thus, his previous failure to make an ineffective assistance claim does not bar his raising it in a second petition.[55]

---

[53] Jeffries, 114 Wn.2d at 500 (emphasis omitted).

[54] Jeffries, 114 Wn.2d at 501 (quoting Sanders v. United States, 373 U.S. 1, 18, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963)).

[55] "[D]ismissal of a writ as abusive is based upon equitable principles." Jeffries, 114 Wn.2d at 500; see Sanders, 373 U.S. at 17.

## CONCLUSION

Because the significant change in the law that <u>Padilla</u> made is material to Orantes's ineffective assistance claim, the statute of limitations does not bar that claim. And because this court's decision finding <u>Padilla</u> retroactive was an intervening change in the law after Orantes's first petition, his second petition is not an "abuse of the writ." We remand for a reference hearing on the merits of Orantes's ineffective assistance of counsel claim.

*Leach, J.*

WE CONCUR:

*Spearman, J.*                    *Appelwick, J.*