IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>          Respondent,<br><br>      v.<br><br>DERRICK DWAYNE BRANCH,<br><br>          Appellant. | No. 82550-0-I<br>Consolidated with<br>No. 82580-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |
| In the Matter of the Personal Restraint<br>Petition of:<br><br>DERRICK DWAYNE BRANCH,<br><br>          Petitioner. | |

CHUNG, J. — Derrick Branch was convicted of rape in the second degree and felony violation of a domestic violence no-contact order, both alleged as crimes of domestic violence and carrying additional domestic violence aggravators. After his first appeal, this court remanded for resentencing. The trial court imposed a determinate sentence and then, on the State's motion, modified it to an indeterminate sentence. Branch now appeals the modified sentence, arguing that even though the court properly imposed an indeterminate term, he is entitled to a full resentencing hearing. In his personal restraint petition (PRP), consolidated here with the direct appeal, Branch claims the State committed prosecutorial misconduct by eliciting excluded prior act testimony from its

complaining witness and his counsel provided ineffective assistance by failing to raise the claim of prosecutorial misconduct in his prior appeal. He also asserts the State violated his constitutional rights by failing to meet its Brady[1] obligation to disclose exculpatory evidence on his phone and by refusing to return his phone unless he agreed to give the State access to its contents. We affirm the trial court's order granting the State's CrR 7.8 motion and amending his sentence, and we deny his petition.

FACTS

The relevant background and procedural facts are set out in our opinion on Branch's first direct appeal:

> Branch and S.M. met in February 2015 and began a romantic relationship. After S.M. moved in with Branch, she returned home with physical injuries. On July 1, 2015, Valley Medical Center emergency department treated S.M., where she reported that her boyfriend attacked and raped her.
> On June 1, 2016, S.M. reported domestic violence at the Des Moines Police Department. The next day, the Des Moines Police Department responded to a 911 call, where S.M. reported that her boyfriend choked her. She was transported to the emergency room at Highline Medical Center where she reported that her boyfriend physically and sexually abused her during their relationship. S.M. went to [the] Des Moines Police Department again on June 3, 2016, and reported more details about the prior rape and abuse from her boyfriend.
> S.M. then obtained a protection order against Branch. On numerous occasions, Branch was seen with S.M. after the court entered a no-contact order.
> The State charged Branch with four counts of assault, three counts of violation of a no-contact order, and one count of rape.
> At trial, S.M. testified that Branch never assaulted or raped her. She explained that her injuries were either caused by someone other than Branch or by herself when she would attack Branch and he would defend himself.

---

[1] Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

State v. Branch, No. 78379-3-I, slip op. at 2-3 (Wash. Ct. App. Feb. 18, 2020) (unpublished), http://www.courts.wa.gov/opinions/pdf/783793.pdf.

On remand, after considering mitigating factors, the trial court sentenced Branch to an exceptionally low determinate sentence of 90 months. Soon thereafter, however, the State filed a CrR 7.8 motion arguing it had been incorrect in recommending a determinate sentence for his second degree rape conviction and that the court should sentence Branch to an indeterminate sentence. The sentencing court agreed and modified the judgment and sentence by adding the maximum term of life, thus converting Branch's sentence to an indeterminate one. Branch appealed the order granting the CrR 7.8 motion and modifying his judgment and sentence.

Separately, Branch filed his own CrR 7.8 motion alleging prosecutorial misconduct. The trial court transferred that motion to this court as a PRP, which we consolidated with Branch's direct appeal of his modified sentence after resentencing.

DISCUSSION

I.    Appeal of Indeterminate Sentence

Branch appeals the trial court's decision to grant the State's CrR 7.8 motion and amend his exceptional downward determinate sentence of 90 months to an indeterminate sentence of a minimum of 90 months to a maximum term of life in prison.

We review a ruling on a CrR 7.8 motion for abuse of discretion. State v. Crawford, 164 Wn. App. 617, 621, 267 P.3d 365 (2011). A trial court abuses its discretion if its decision rests on untenable factual grounds or was made for untenable legal reasons. State v. Frohs, 22 Wn. App. 2d 88, 92, 511 P.3d 1288 (2022). Interpretation of the Sentencing Reform Act is a question of law that we review de novo. Crawford, 164 Wn. App. at 622.

After the parties' opening briefs were filed, the Washington Supreme Court decided In re Pers. Restraint of Forcha-Williams, 200 Wn.2d 581, 520 P.3d 939 (2022). Forcha-Williams concludes that sentencing courts lack the discretion to replace an indeterminate sentence with a determinate one. 200 Wn.2d at 606. The Court reasoned that setting and altering criminal penalties is the sole prerogative of the legislature, and RCW 9.94A.507 requires both a minimum and maximum term for sentencing of sex offenders. 200 Wn.2d at 591-93.

Branch was convicted of second degree rape, and he concedes that under Forcha-Williams, the court was required to impose an indeterminate term. We accept the concession. Branch argues that nevertheless, this court should remand for a full sentencing hearing because if the trial court had known it was required to impose a maximum term of life, it may have sentenced Branch to a lower minimum term.

As we noted in Branch's direct appeal, "[w]here a defendant has requested an exceptional sentence below the standard range, 'review is limited to circumstances where the court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence

4

below the standard range.' " <u>Branch</u>, No. 78379-3-I, slip op. at 10 (quoting <u>State</u> <u>v. Garcia-Martinez</u>, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997)). We held in Branch's first appeal that the trial court initially "did not exercise its discretion" and ordered "remand so that it can," <u>Branch</u>, No. 78379-3-I, slip op. at 12, and it is clear that the sentencing court on remand did so. The trial court held a hearing and considered evidence, presentence reports and exhibits, and the arguments of counsel. It then exercised its discretion by sentencing Branch to an exceptional downward sentence, and supported the exceptional sentence with written findings of fact and conclusions of law. Thus, the sentencing court had already exercised its discretion by imposing an exceptional downward minimum term; subsequently modifying that sentence by granting the State's CrR7.8 motion and adding the statutory maximum term—a term over which it had no discretion—did not change that exercise of discretion. Remand for resentencing is unnecessary.

    II.    <u>Personal Restraint Petition</u>

In his PRP, Branch claims a violation of his right to a fair trial based on prosecutorial misconduct and ineffective assistance from appellate counsel because they failed to raise the prosecutorial misconduct issue in his first direct appeal. He also challenges the State's failure to disclose exculpatory evidence on his cell phone under <u>Brady</u>, claiming it violated his rights to present a defense and a fair trial. Finally, Branch claims conditioning the return of his phone on his providing the State with his password violated his rights to privacy, association, and against self-incrimination.

A person is entitled to relief via a PRP when that person is restrained unlawfully. RAP 16.4; In re Pers. Restraint of Dodge, 198 Wn.2d 826, 836, 502 P.3d 349 (2022). The petition will be granted "if (1) [the defendant] was actually and substantially prejudiced by a violation of his constitutional rights; or (2) that the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice." In re Pers. Restraint of Mulholland, 161 Wn.2d 322, 331-32, 166 P.3d 677 (2007) (internal quotations omitted). The petitioner has the burden of proof by a preponderance of the evidence. In re Pers. Restraint of Cook, 114 Wn.2d 802, 814, 792 P.2d 506 (1990).

A. Prosecutorial Misconduct and Ineffective Assistance of Counsel

Branch's prosecutorial misconduct and ineffective assistance claims both arise from the same allegedly "improper questions" asked by the prosecutor during S.M.'s testimony. The State argues that this court rejected the same grounds in Branch's first direct appeal.

A personal restraint petition is not meant to be a forum for relitigation of issues already considered on direct appeal. In re Pers. Restraint of Lord, 123 Wn.2d 296, 329, 868 P.2d 835 (1994). A petitioner is prohibited from renewing an issue that was raised and rejected on direct appeal unless the interests of justice require relitigating that issue. In re Pers. Restraint of Yates, 177 Wn.2d 1, 17, 296 P.3d 872 (2013). The interests of justice are served only if there has been an intervening change in the law or some other justification for the petitioner's failure to raise a crucial point or argument in the prior application. Id. "Simply 'revising' a previously rejected legal argument, however, neither creates

6

a 'new' claim nor constitutes good cause to reconsider the original claim." In re Pers. Restraint of Jeffries, 114 Wn.2d 485, 488, 789 P.2d 731 (1990). Nor may a petitioner recast an issue previously resolved on direct appeal by claiming ineffective assistance of counsel. In re Pers. Restraint of Benn, 134 Wn.2d 868, 906, 952 P.2d 116 (1998).

In his Statement of Additional Grounds (SAG) in his first direct appeal, Branch argued the State asked S.M. "objectionable questions knowing that [S.M.]'s answers would introduce inadmissible evidence." On this point, this court's opinion states, "Branch does not identify any inadmissible evidence introduced by the State." Branch, No. 78379-3-I, slip op. at 14. Branch further argued the questions were "a rape shield violation" and also violated "the motions in limine." We noted Branch could not seek relief for violations of the rape shield statute because it protects victims, not defendants. Further, we stated, "Branch does not point to any motions in limine that the prosecutor violated." Id.

While we determine that Branch did previously raise the same issue about the prosecutor's questions, with the benefit of briefing in this PRP by appointed counsel, the basis for Branch's arguments is more apparent. Thus, while we determine Branch cannot relitigate that claim via collateral attack, we nonetheless examine it to explain that conclusion.

Before trial, the State sought to admit ER 404(b) evidence of prior acts of violence by Branch toward S.M., including statements made to a sexual assault nurse examiner, to the police, and in support of a petition for a domestic violence protection order (DVPO) regarding an alleged sexual assault in February 2015.

7

Because S.M. was a recanting victim, the State sought to offer this evidence to bolster S.M.'s credibility and, thus, to prove the charged acts occurred, as well as to show her fear of Branch. The court denied the State's motion to admit this 404(b) evidence because it could not find by a preponderance that the uncharged acts occurred. It reserved whether the same evidence could be used later to impeach S.M.

In its direct examination of S.M., the State laid a foundation that S.M. was living with Branch in the summer of 2015. The following exchange then occurred:

| | |
|---|---|
| [State] | Okay. And were you still going to college at this time? |
| [S.M.] | I think no. |
| | |
| [State] | Why? |
| [S.M.] | Uhm, because some things had happened prior, uhm, that had stopped me from going to college. |
| | |
| [State] | What was that? |
| [S.M.] | Uhm, I was attacked and sexually assaulted, not by -- not by [Branch], but by someone else, and so I stopped going to college. |

During a recess from testimony, Branch argued that the "State can't open their own door" for the 404(b) evidence previously excluded, to which the State responded it "did not have any idea that would be her reply." After further discussion, the court reiterated its prior ruling not to allow the State to impeach S.M. with prior inconsistent statements using evidence of prior uncharged acts—specifically the February 2015 sexual assault that was the subject of the petition for a DVPO, in which S.M. had identified Branch.

The next morning, after additional colloquy about the issue, the court noted that although S.M. mentioned the February 2015 sexual assault on direct,

"it didn't sound like [the State] was specifically trying to elicit" prior act evidence and characterized S.M.'s testimony as "spontaneous." Branch asked the court to strike S.M.'s testimony from the prior day about the February 2015 assault and to issue a limiting instruction. The State opposed the request and asked instead to question S.M. about the February 2015 incident in order to distinguish it from the charged act. The court declined Branch's request to strike the testimony, stating the jurors would likely not be able to obey that instruction and it was not necessary to prevent unfair prejudice to Branch.

When S.M.'s testimony resumed, the State established that S.M. and Branch's relationship began in February 2015, that they were living together, that Branch was her boyfriend in October and November 2015, and that Branch was the only boyfriend S.M. ever had. Then the State asked S.M. to go back to the prior day's testimony "that [S.M.] had been attacked and sexually assaulted by someone else and that it happened near the college in Auburn." Branch objected, the court overruled the objection, and the court asked the parties to move on.

Later, out of the presence of the jury, the State asked the court to allow it to "ask clarifying questions to distinguish [S.M.'s testimony] as to the time period, where it occurred, whether she reported, and if she had injury." Branch objected, but the court allowed the State to ask these questions. The court reasoned that while it had excluded ER 404(b) evidence, at this point, S.M. had testified to a sexual assault by someone other than Branch, and the State was not asking the court to revisit the 404(b) analysis. When direct examination resumed, the State

asked its questions. Branch objected to the State's question about whether the assault by the stranger occurred at the beginning or end of 2015. The court overruled the objection and S.M. responded it "probably happened [at] the beginning."

The crux of Branch's claim both on direct appeal and in this PRP is that pre-trial, the court had excluded ER 404(b) evidence relating to uncharged prior acts of violence by Branch against S.M., and that it was misconduct for the State to have then elicited S.M.'s testimony about the February 2015 assault.

Generally, to prevail on a prosecutorial misconduct claim, a defendant who timely objects must prove that the prosecutor's conduct was both improper and prejudicial in the context of the entire trial. State v. Zamora, 199 Wn.2d 698, 708-09, 512 P.3d 512 (2022) (citing State v. Loughbom, 196 Wn.2d 64, 70, 470 P.3d 499 (2020)) (internal quotations omitted). On collateral review, a petitioner must prove that "the alleged misconduct was either a constitutional error that resulted in actual and substantial prejudice or a fundamental defect that resulted in a complete miscarriage of justice." In re Pers. Restraint of Lui, 188 Wn.2d 525, 539, 397 P.3d 90 (2017).

The prosecutor's questions to S.M. about the February 2015 incident were not improper. The State did not elicit S.M.'s testimony about it; rather, S.M. raised the incident herself in response to a question about why she left college. Further questioning by the State about the incident did not elicit any of the previously excluded ER 404(b) evidence. ER 404(b) prohibits "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show

action in conformity therewith." But S.M. did not testify that Branch attacked and sexually assaulted her. Rather, she testified that the perpetrator was someone else. Nor did the court permit the State to impeach S.M. with her prior statement in support of her petition for a DVPO that accused Branch of the February 2015 assault. Because the prosecutor's questions were not improper, Branch also cannot establish that they were prejudicial.

Having raised the claim of prosecutorial misconduct on direct appeal, Branch cannot raise the same claim again in this PRP. He also cannot recast this claim as ineffective assistance of appellate counsel. See In re Pers. Restraint Petition of Khan, 184 Wn.2d 679, 688-89, 693, 363 P.3d 577 (2015) (allowing ineffective assistance claim on new ground not previously raised on direct review, but refusing to review a separate ineffective assistance claim that was "a repackaging of" grounds resolved on direct review). Thus, we deny Branch's PRP claim based on prosecutorial misconduct.

B. Claims Based on Cell Phone Information

Branch claims his rights to present a defense and to a fair trial were denied because the State withheld exculpatory evidence on his phone. He further claims the court violated his rights to privacy, association, and against self-incrimination by conditioning Branch's access to his phone.[2]

---

[2] Branch at points claims the State, rather than the court, was responsible for these violations, alleging it "tried to leverage its possession of exculpatory information to force Mr. Branch to give up his rights to privacy, association, and against self-incrimination."

The State seized Branch's phone incident to his arrest. The State had warrants to search the phone for evidence that Branch violated a no-contact order, but it could not unlock the phone, and Branch refused to provide the code. Pre-trial, S.M. told her victim advocate that "she was concerned that she could get into trouble for something on the phone, she didn't specify what." The State subsequently informed Branch that "the phone may contain potentially exculpatory information (based on what the victim represented to the advocate). Please consult with the defendant as to whether he wants to consent to the search of his cell phone by providing the password."

Branch moved for the return of his phone. The court decided Branch should have access to his phone, but if he decided to use anything from it, then the State should have access to the unlocked phone. The court offered to let Branch's investigator unlock the phone and make a copy of its contents for Branch's inspection. If Branch decided to use the copy, a copy would also be turned over to the State. Branch agreed he would notify the court if he wanted such an order, but the record does not show he ever did so. The State never succeeded in unlocking Branch's phone.

A Brady violation occurs when a prosecutor suppresses "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87, cited in In re Pers. Restraint of Mulamba, 199 Wn.2d 488, 497, 508 P.3d 645 (2022). Brady claims are reviewed de novo. Mulamba, 199 Wn.2d at 498.

A <u>Brady</u> violation consists of three elements. First, the withheld evidence must be favorable to the accused, either because it is exculpatory or because it is impeaching; second, the evidence must have been suppressed by the State, either willfully or inadvertently; and third, prejudice must have ensued. <u>Mulamba</u>, 199 Wn.2d at 498 (citing <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (internal quotations omitted); <u>In re Pers. Restraint of Stenson</u>, 174 Wn.2d 474, 486-87, 276 P.3d 286 (2012)).

Here, as to whether the withheld evidence was favorable to Branch, Branch argues the phone's contents must have been favorable to him because the State used the word "exculpatory." But beyond this speculation, Branch has not pointed to any evidence that there was exculpatory information. While the State did not further investigate what S.M. meant by her statement to her victim advocate,[3] its failure to do so is not evidence that the State knew of any information on the phone that was exculpatory.

Regarding the second element of suppression of evidence, the "prosecution is under no obligation to turn over materials not under its control." <u>State v. Mullen</u>, 171 Wn.2d 881, 901, 259 P.3d 158 (2011) (quoting <u>United States v. Aichele</u>, 941 F.2d 761, 764 (9th Cir. 1991)). Moreover, when a defendant has enough information to be able to ascertain the supposed <u>Brady</u> material on the defendant's own, there is no suppression by the government.

---

[3] A prosecutor has a duty to learn of and disclose any favorable evidence known to others acting on the government's behalf. <u>Mulamba</u>, 199 Wn.2d at 499 (citing <u>Kyles v. Whitley</u>, 514 U.S. 419, 437, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)). There is no record evidence that the State followed up with S.M. about what she meant.

Aichele, 941 F.2d at 764 (citing United States v. Dupuy, 760 F.2d 1492, 1501 n.5 (9th Cir. 1985) (collecting cases)). Here, Branch knew more about the contents of his phone than the State. The State agreed it would gain access to the unlocked phone only if Branch chose to use its contents, and Branch did not so choose. The State had access to the physical phone, but not the contents, so it did not suppress information.

Finally, Branch cannot establish the third element for a Brady violation, prejudice. Prejudice means material to the result. Mulamba, 199 Wn.2d at 498. Evidence is material for Brady purposes when there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Mulamba, 199 Wn.2d at 498 (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985) (plurality)). Branch does not explain how the suppressed evidence was material, but rather argues that he cannot make an offer of proof when the State is in possession of his phone. But the information remained inaccessible to the State, and Branch had more knowledge about the phone's information content than did the State. See Mullen, 171 Wn.2d at 899 ("[A]ny allegation of suppression boils down to an assessment of what the State knows at trial in comparison to the knowledge held by the defense."). Branch also chose to interview S.M. without creating a record about what she said was on the phone. Branch fails to establish prejudice from the State's failure to disclose information on Branch's own cell phone.

In addition to the alleged <u>Brady</u> violation, Branch also argues that by conditioning the return of the phone on his providing his password, the court violated his rights to privacy, association, and against self-incrimination. But he does not challenge the propriety of the State's warrants to search his phone.[4] A valid warrant provides the "authority of law" required to "disturb" a person's "private affairs." CONST. art. I, § 7. While Branch cites cases stating that cellphones reveal private information, he fails to provide any argument applying that authority to the facts here. "This court will not consider claims insufficiently argued by the parties." <u>State v. Elliott</u>, 114 Wn.2d 6, 15, 785 P.2d 440 (1990).

We affirm the trial court's order granting the State's CrR 7.8 motion and amending his sentence, and we deny Branch's PRP.

_Chung, J._

WE CONCUR:

_Birk, J._          _Mann, J._

---

[4] Instead, Branch claims the court's "limitless ruling permitting the government complete access to all information on the phone far exceeded the information authorized by the . . . narrowly tailored search warrant."